FILED
1/8/21 4:24 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Case No. 20-21255-GLT |
|  | : | Chapter 13 |
| **RICHARD P. BUTKO AND** | : |  |
| **LORRAINE E. BUTKO,** | : |  |
|  | : |  |
| *Debtors.* | : |  |
|  | : |  |
| **RICHARD P. BUTKO AND** | : |  |
| **LORRAINE E. BUTKO,** | : |  |
|  | : |  |
| *Movant,* | : | Related to Dkt. Nos. 52, 54, 56, 60 |
|  | : |  |
| v. | : |  |
|  | : |  |
| **RONALD A. CICCOZZI,** | : |  |
|  | : |  |
| *Respondents.* | : |  |
|  | : |  |

| | |
|---|---|
| Max C. Feldman, Esq. | Christian M. Rieger, Esq. |
| Law Offices of Max C. Feldman | The Law Office of Christian M. Rieger |
| Coraopolis, PA | Pittsburgh, PA |
| *Attorney for the Butkos* | *Attorney for Mr. Ciccozzi* |

## <u>MEMORANDUM OPINION</u>

In our legal system, disappointed litigants have the right to exhaust every legitimate remedy available before resigning themselves to the finality of an adverse judgment. But they may not continually rehash rejected arguments, engage in forum shopping, and launch repeated collateral attacks in a futile attempt to forestall the inevitability of a final judgment. Richard P. and Lorraine E. Butko ("Debtors") seek reconsideration[1] of an order granting Ronald A. Ciccozzi relief from the automatic stay to pursue his rights to a residential property in Monaca, Pennsylvania

---

[1] *Amended Motion to Amend Findings of Fact, Alter Judgment, for Relief from Judgment and/or for New Trial* (the "Motion"), Dkt. No. 52. Unless otherwise stated, all docket references are to the present case. <u>See</u> Case No. 20-21255-GLT.

following their default under an installment land contract.[2]  As a practical matter, this represents

the Debtors' *__fifth__* attempt to overturn an un-appealed decision of this Court entered over two years

ago about the applicability of certain state law defenses.[3]  Given this reality, and perceiving the

*Motion* to be wholly without merit, the Court issued an order to show cause (the "Order to Show

Cause"), threatening both the denial of the *Motion* and the imposition of sanctions against the

Debtors and their counsel, Attorney Max C. Feldman.[4]  They filed a timely response challenging

each of the observations that prompted the *Order to Show Cause*.[5]  Mr. Ciccozzi opposes the

*Motion*.[6]  While the Court is under no illusion that its decision on these matters will end the war

between the Debtors and Mr. Ciccozzi, it will, at least, once again close this front.  For the reasons

set forth below, the Court will deny the *Motion* but will forgo imposing sanctions for now.

## I.      BACKGROUND

The facts, which are almost entirely a matter of record, are uncontested.  Instead,

the Debtors contend that the Court has made a series of legal errors regarding the applicability of

certain provisions of the Pennsylvania Loan Interest and Protection Law, a consumer protection

statute more commonly known as "Act 6,"[7] that have tainted all subsequent proceedings.  At issue

is the extended cure period afforded to homeowners in default by Act 6 and the requirement that

mortgagees provide them a statutory notice prior to any collection action.  To appropriately set the

---

[2]      See <u>Ciccozzi v. Butko (In re Butko)</u>, 617 B.R. 532 (Bankr. W.D. Pa. 2020) ("Butko II").

[3]      See <u>Butko v. Ciccozzi (In re Butko)</u>, 584 B.R. 97, 99 (Bankr. W.D. Pa. 2018) ("Butko I").

[4]      *Order to Show Cause*, Dkt. No. 54.

[5]      *Debtors' Response to the Court's Order to Show Cause* (the "Response"), Dkt. No. 56.  Attorney Feldman did not file a separate response, but clarified that it was his intent to join in the Debtors'.

[6]      *Respondent Ronald Ciccozzi's Response to Debtor's Motion to Reconsider/Vacate Order and to Amend Findings of Fact and/or Alter Judgment, and Response to Order to Show Cause* (the "Ciccozzi Response"), Dkt. No. 60.

[7]      41 Pa. Stat. Ann. § 101 *et seq.*

stage and emphasize the procedural complexity of the relief now requested, a review of the tortured

history of this acrimonious dispute is necessary.

Before doing so, the Court would be remiss if it did not acknowledge from the

outset that the stakes are understandably very high for the Debtors.  Indeed, they face the loss of

their home of over a decade and any potential equity within it.  But this consequence did not strike

without warning and arises _solely_ from their inability to honor their agreements.  It is also

important to recognize that Mr. Ciccozzi has endured years of bitter and costly litigation with no

end in sight and no post-default right to adequate protection.  Given these realities, the Court has

endeavored to give the Debtors all process and consideration that is due and befits the gravity of

the situation.

### A.      **The Genesis of the Dispute**

In July 2009, the Debtors entered into an installment land contract with Mr.

Ciccozzi and his late wife, Joan, to purchase certain real property in Monaca, Pennsylvania

("Property").[8]  In December 2014, the parties executed a _Lease with Option to Purchase_ ("Lease")

that, among other things, terminated the 2009 agreement and released any related rights.[9]  It is

unclear why the parties changed their agreement.[10]  In any event, the _Lease_ called for the Debtors

to pay monthly rent in the amount of $1,675.[11]  On or before November 1, 2017, they could elect

to purchase the Property for $43,632 (plus costs) upon 30 days' notice to the Ciccozzis and receive

a credit of  $1,212 towards the purchase price from each tendered rental payment.[12]  A little less

---

[8]      Butko I, 584 B.R. at 99.

[9]      _Id._

[10]     _Id._

[11]     _Id._

[12]     _Id.; see also_ _Exhibit A_, Case No. 16-23695-GLT, Dkt. No. 14-1 at ¶ 3.

than two years later, the Debtors defaulted on their rental payment obligation, prompting them to

seek bankruptcy protection.[13]

> ### B.      The 2016 Bankruptcy

On October 1, 2016, the Debtors filed a chapter 13 petition with the assistance of

Attorney Gary W. Short.[14]   Almost immediately, Mr. Ciccozzi filed a motion for stay relief

alleging that the Debtors had no more than a limited possessory interest in the Property due to their

default.[15]   The Debtors opposed, positing that the *Lease* was not a true lease, but a disguised

financing agreement in the form of an installment land contract.[16]   Notably, this was the first time

the Debtors raised the Act 6 notice and cure provisions as a defense before this Court.[17]   On

December 22, 2016, the Court issued a *Memorandum Order* finding the *Lease* to be a true lease

agreement because it was terminable at will.[18]   The Court nonetheless denied stay relief at that

time because the *Lease*'s cure period had not expired prior to the petition date.[19]   The Debtors

appealed, but the United States District Court for the Western District of Pennsylvania dismissed

the appeal as interlocutory.[20]

---

[13]    Butko I, 584 B.R. at 99.

[14]    See Case No. 16-23695-GLT.

[15]    Butko I, 584 B.R. at 99-100; *Motion for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 14.

[16]    Butko I, 584 B.R. at 100; *Debtors' Response to Motion for Relief from Stay of Ronald A. Ciccozzi and Joan L. Ciccozzi*, Case No. 16-23695-GLT, Dkt. No. 30.

[17]    *Debtors' Response to Motion for Relief from Stay of Ronald A. Ciccozzi and Joan L. Ciccozzi*, Case No. 16-23695-GLT, Dkt. No. 30 at ¶ 1; *Brief in Support of Debtors' Response to Motion for Relief from Stay of Ronald A. Ciccozzi and Joan L. Ciccozzi, Case No. 16-23695-GLT*, Dkt. No. 31.

[18]    Butko I, 584 B.R. at 100; *Memorandum Order*, Case No. 16-23695-GLT, Dkt. No. 41.

[19]    Butko I, 584 B.R. at 100.

[20]    Id.

Undaunted, the Debtors then filed an amended chapter 13 plan to assume the *Lease* under section 365 of the Bankruptcy Code[21] and exercise the purchase option during the plan term.[22]  Mr. Ciccozzi objected to the plan disputing, among other things, the continued availability of the purchase option upon assumption.[23]  In response, the Debtors requested reconsideration of the *Memorandum Order*, asserting that the *Lease* satisfied the definition of a security instrument subject to Act 6 requirements and protections.[24]  Hoping to move the parties past their bitterness and towards a consensual resolution of their dispute, the Court referred the matter to mediation before the Honorable Judith K. Fitzgerald, a former chief judge of this Court.[25]

### 1.    The *Settlement Agreement*

Mediation proved fruitful, though not in any lasting sense.  Recognizing the high cost of litigating all of the disputed issues between them, the Debtors and Mr. Ciccozzi entered into a settlement agreement ("Settlement Agreement") that essentially reset the parties' rights and gave the Debtors one last chance to complete the sale.[26]  The *Settlement Agreement* required the Debtors to pay Mr. Ciccozzi $1,675 on the fifth of each month for thirty-six months, effectively spreading the increased purchase price of $60,300 over an additional three years beyond the

---

[21]    Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[22]    Butko I, 584 B.R. at 100.

[23]    Id.

[24]    *Debtors' Response to the Ciccozzis' Objections to the Debtors' Amended Chapter 13 Plan dated February 24, 2017 and Debtor's (Cross) Motion for Reconsideration*, Case No. 16-23695-GLT, Dkt. No. 122.

[25]    Butko I, 584 B.R. at 100.

[26]    Id.; see also *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1.

*Lease*'s option deadline.[27]  Unlike the *Lease*, the Debtors received full credit for each payment.[28]

If all went according to plan and the Debtors timely made all payments, an executed deed to the

Property would be released to them from escrow.[29]

Commensurate with their intent that the *Settlement Agreement* finally end the

dispute, the default provisions also had teeth.  The Debtors were provided a ten-day cure period

upon a payment default that expired on the 16th day of the month.[30]  Under the *Settlement*

*Agreement*, Mr. Ciccozzi expressly had no obligation to notify the Debtors of any nonpayment.[31]

It also provided that if a default was not timely cured, "then all rights that [the] Butkos may have

in the Property shall finally and permanently terminate" and that they "will have 30 days from the

17th day of the calendar month to remove voluntarily from the Property."[32]  In other words, the

Debtors needed to promptly pay or walk away.

In the event of an uncured default, Mr. Ciccozzi would be entitled to stay relief

upon an affidavit of default.[33]  If the Debtors failed to leave the Property as required, then the

Court would enter a judgment for possession in favor of Mr. Ciccozzi in the attached form.[34]

---

[27]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 3.  Taking into account the remaining balance of the option due under the *Lease* and crediting Mr. Ciccozzi for real estate taxes and insurance he was obligated to pay under *Settlement Agreement*, the purchase price increased by $28,632. *Motion for Expedited Hearing to Approve Settlement between Richard P. Butko and Lorraine Butko and Ronald A. Ciccozzi and Joan L. Ciccozzi*, Case No. 16-23695-GLT, Dkt. No. 137 at ¶ 7.a.

[28]    Somewhat counterintuitively, receiving full credit for each payment was a disincentive for the Debtors to prepay the full amount because Mr. Ciccozzi was responsible for the real estate taxes and insurance during the payment term.  See *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 24.

[29]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 21.

[30]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶¶ 12, 14.

[31]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 13.

[32]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 15.

[33]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 18.

[34]    Butko I, 584 B.R. at 100; see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 17.

6

Presumably due to the operative speed of these provisions, the *Settlement Agreement* did not contemplate any economic remedies post-default, such as late fees or interest.

In September 2017, the Debtors presented the *Settlement Agreement* to this Court for approval under Bankruptcy Rule 9019.[35]   From the start, the Debtors were admittedly fully aware of the heavy repercussions of a future default:

> It is admitted that the forfeiture procedure is dangerous. The Butkos have been fully informed of this risk and have been advised to attend the hearing on this motion. They agree to accept this risk due to their inability to fund the option payment and extensive additional litigation costs absent settlement and to remove any risk of loss of the Residence by an adverse ruling on appeal.[36]

The Debtors pledged their commitment to the settlement by insisting they would implement precautionary measures, such as depositing $13,000 of exempt funds in a special purpose account, to ensure compliance.[37]   Despite its stated misgivings on the record about the onerous nature of the default provisions, the Court approved the *Settlement Agreement* subject to certain modifications, including a requirement that Mr. Ciccozzi report any default to the Court within two days after the expiration of the cure period.[38]

### 2.      The First Alleged Defaults and the Assertion of Act 6

Less than two months later, Mr. Ciccozzi filed an affidavit notifying the Court that the Debtors were in default of their November 2017 payment obligation and requesting enforcement of the forfeiture provisions of the *Settlement Agreement*.[39]   The Debtors quickly

---

[35]      Butko I, 584 B.R. at 100.

[36]      Butko I, 584 B.R. at 100-01 (quoting *Motion for Expedited Hearing to Approve Settlement between Richard P. Butko and Lorraine Butko and Ronald A. Ciccozzi and Joan L. Ciccozzi*, Case No. 16-23695-GLT, Dkt. No. 137 at ¶ 9).

[37]      *Motion for Expedited Hearing to Approve Settlement between Richard P. Butko and Lorraine Butko and Ronald A. Ciccozzi and Joan L. Ciccozzi*, Case No. 16-23695-GLT, Dkt. No. 137 at ¶ 8.

[38]      Butko I, 584 B.R. at 101.

[39]      Id.

moved to deny Mr. Ciccozzi relief, arguing that the *Settlement Agreement* was itself an installment land contract subject to Act 6, affording them an unwaivable right to a statutory notice of default and a 30-day cure period.[40]  Thus, while they admitted they did not make payment by November 16, 2017, the Debtors asserted that the applicable cure period had not yet started due to Mr. Ciccozzi's failure to provide a proper notice under Act 6.[41]  Crucially, by urging the Court to deny Mr. Ciccozzi stay relief "until he complies with the Act 6 notice," the Debtors effectively sought an affirmative ruling that the Act 6 notice and cure requirements superseded the default provisions of the *Settlement Agreement*.[42]

In response, Mr. Ciccozzi argued that the Debtors are estopped from asserting Act 6 else there was no meeting of the minds because of a mutual mistake about the enforceability of material terms of the *Settlement Agreement*.[43]  The Debtors replied that neither estoppel nor mutual mistake applied because the length of the cure period was not an essential term of the *Settlement*

---

[40]     Id.; see *Motion to Deny Ronald A. Ciccozzi's Request for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 170.  In their 2016 case, the Debtors repeatedly mischaracterized the effect of section 403(a) of Act 6 as providing a 30-day statutory right to cure any default, rather than requiring a 30-day notice period of cure rights under section 404 of Act 6 before taking legal action.  See 41 Pa. Stat. Ann. § 403(a).

[41]     *Motion to Deny Ronald A. Ciccozzi's Request for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 170 at ¶ 10.

[42]     Id. at 4.  This point is made clear by the Debtors' proposed order, which provides in relevant part:

> 1. The settlement agreement between Ciccozzi and the Butkos approved by this Court . . . is an installment land sale agreement under Pennsylvania law which is governed by 41 P.S.§ 101 et seq, Act 6 of Jan, [sic] 30, 19744 [sic], P.L.13. ("Act 6");
>
> * * *
>
> 3. *Ciccozzi is required to provide the Butkos with a notice of default as required by Act 6* but has failed to do so.

*Proposed Order*, Case No. 16-23695-GLT, Dkt. No. 170-1 (emphasis added).

[43]     Butko I, 584 B.R. at 101; see *Response of Ronald A. Ciccozzi to Debtors' Motion to Deny Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 176.

*Agreement* and there was no bad faith in merely asserting statutory protections.[44]  In any event, the Debtors contended that Mr. Ciccozzi waived the default by accepting payment late.[45]

While the Debtors' motion to deny relief was under consideration, Mr. Ciccozzi filed another affidavit of default related to the December 2017 payment, followed by a motion seeking to vacate the *Settlement Agreement* pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(6).[46]  He argued that if the default provisions of the *Settlement Agreement* were not enforceable as written, then he would be denied the benefit of his bargain and left without consideration for his concessions.[47]  The Debtors then filed notices suggesting they had cured their defaults and paid their January 2018 obligation.[48]  They also filed a response opposing the vacation of the *Settlement Agreement*, denying the existence of "extraordinary circumstances" warranting relief under Rule 60(b)(6),[49] and asserting that "[Mr.] Ciccozzi should have known that the *Settlement Agreement* was subject to the provisions of Act 6."[50]

---

[44]     Butko I, 584 B.R. at 101; *see Debtors' Reply to Response of Ronald A. Ciccozzi to Debtors' Motion to Deny Ronald A. Ciccozzi's Request for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 177.

[45]     Id.

[46]     Butko I, 584 B.R. at 101. Fed. R. Civ. Pro. 60(b)(6) is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[47]     *Motion of Ronald A. Ciccozzi Pursuant To F.R.C.P. 60(B)(6) and F.R.B.P. 9024 to Vacate and Set Aside the Order Approving the Mediated Settlement and to Rescind the Mediated Settlement Agreement*, Case No. 16-23695-GLT, Dkt. No. 187 at ¶¶ 41-45.

[48]     Butko I, 584 B.R. at 101.

[49]     Id.

[50]     *Debtors' Response to the Motion of Ronald A. Ciccozzi to Vacate and Set Aside the Order Approving the Mediated Settlement and to Rescind the Mediated Settlement Agreement*, Case No. 16-23695-GLT, Dkt. No. 192 at ¶ 9.  This statement stands in stark contrast to Attorney Short's insistence that he "did not realize that Act 6 **may** apply to the agreement until sometime in October 2017 and did not realized that it **did** apply until after Ciccozzi filed his notice of default."  *Debtors' Reply to Response of Ronald A. Ciccozzi to Debtors' Motion to Deny Ronald A. Ciccozzi's Request for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 177 at n. 3 (emphasis in original); see also Butko I, 584 B.R. at 107 (At the December 20, 2017 hearing, "Debtors' counsel represented that 'I'd like to lead the Court to believe that I'm such an outstanding lawyer that I knew all this at the time, but I did not. It dawned on me in October when I was working on the banking arrangement to make payments.'").

The Court held several hearings on these matters between December 2017 and March 2018. The Court initially deferred its decision to afford the parties an opportunity to explore a lasting financial resolution, rather than a temporary legal one, through a financed lump-sum payment to Mr. Ciccozzi. As time progressed, however, the parties only became further entrenched in their positions. For his part, Mr. Ciccozzi withdrew his motion to set aside the *Settlement Agreement* in favor of pressing for its strict enforcement and refusing to accept full payment.[51] He nevertheless retained all post-default payments as rental fees.[52] The Debtors, though optimistic about obtaining financing, were unsure whether it mattered given Mr. Ciccozzi's position. Given the impasse, a determination of the legal issues surrounding the *Settlement Agreement* and the alleged defaults became necessary.

### 3.   *Butko I*

On April 9, 2018, the Court issued the *Butko I* decision regarding Mr. Ciccozzi's affidavit of default and the Debtors' motion to deny him relief.[53] The Court agreed with the Debtors' assessment that the *Settlement Agreement* satisfied the definitional requirements of an installment land contract, and thus qualified as a "residential mortgage" under Act 6.[54] But, while Act 6 provisions may not be waived by agreement, the Court viewed the issue as a red herring. Recognizing that a waiver "'is the act of *intentionally* relinquishing or abandoning some *known*

---

[51]   See *Withdrawal by Ronald A. Ciccozzi's Motion Pursuant to F.R.C.P. 60(B)(6) and F.R.B.P. 9024 to Vacate and Set Aside the Order Approving the Mediated Settlement and to Rescind the Mediated Settlement Agreement*, Case No. 16-23695-GLT, Dkt. No. 200; *Joint Status Report*, Case No. 16-23695-GLT, Dkt. No. 199 at ¶¶ 1-3.

[52]   Butko I, 584 B.R. at 109; see also *Joint Status Report*, Case No. 16-23695-GLT, Dkt. No. 199 at ¶ 2.

[53]   See *Memorandum Opinion*, Case No. 16-23695-GLT, Dkt. No. 220.

[54]   Butko I, 584 B.R. at 102-04 (citing, *inter alia*, Anderson Contracting Co. v. Daugherty, 274 Pa.Super. 13, 417 A.2d 1227, 1232 (1979)).

right, claim or privilege,'"[55] the Court found none because Attorney Short either: (1) did not have

actual *knowledge* of the potential applicability of Act 6;[56] or (2) despite such knowledge, did not

*intend* to relinquish any rights under Act 6.[57]  Instead, the applicability of Act 6 protections beyond

the terms *Settlement Agreement* turned on judicial estoppel.

      After reviewing the relevant case law on estoppel and void contracts, the Court

concluded that its approval of the *Settlement Agreement* under Bankruptcy Rule 9019 was an

important distinguishing trait.  Unlike the mere entry of a consent order, the Court evaluated the

*Settlement Agreement* in accordance with the standards articulated by the United States Court of

Appeals for the Third Circuit[58] and determined that it was "'fair and equitable' and that 'no one

has been set apart for unfair treatment.'"[59]  It did so based on the Debtors' representations "that

they were fully aware of the risks associated with the forfeiture procedure and that they agreed to

accept them to avoid litigation expenses and protect their interest in the Property."[60]  Put simply,

*they asked the Court to bind the parties to this deal*.

      With that in mind, the Court found that the Debtors' post-approval assertion of the

Act 6 requirements to be irreconcilably inconsistent with their earlier request to be bound by terms

of the *Settlement Agreement* and evidenced bad faith:

      Here, the Debtors petitioned the Court to approve the Settlement Agreement
      upon assurances that they accepted the risks its notice and default provisions

---

[55]    Id. at 107 (quoting Brown v. City of Pittsburgh, 409 Pa. 357, 186 A.2d 399, 401 (1962)) (emphasis in the original).

[56]    Id.

[57]    Id. at 106.

[58]    See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (recognizing four criteria that a bankruptcy court should consider when assessing a settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors").

[59]    Butko I, 584 B.R. at 108 (quoting Eddy v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA (In re Medical Asset Management, Inc.), 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000)).

[60]    Id.

> posed, then sought to escape those consequences once triggered. . . . [T]he
> Court notes that despite representations from Debtors' counsel to the
> contrary, his response to Ciccozzi's first motion for relief from stay
> indicated an awareness of the applicability of Act 6 to both installment land
> contracts and leases with purchase options. *This would suggest he laid a*
> *trap for Ciccozzi during the mediation, knowing that the onerous terms*
> *required to secure Ciccozzi's agreement were unenforceable.*
>
> * * *
>
> To permit [the Debtors] to challenge those provisions now would be to
> dance on their puppet strings, first buying them time in the Property at the
> expense of Ciccozzi's argument that their prior purchase option had
> expired, then taking away the consideration they offered in exchange. *The*
> *integrity of the judicial process cannot allow this result.* The Court will not
> entertain their attempt to "blow hot and cold" by asserting their acceptance
> of risky forfeiture provisions under the guise of Court approval only to
> challenge them as soon as they are triggered in the very same action.[61]

Reasoning that "no lesser remedy than estoppel would deny the Debtors the benefit of this type of

chicanery,"[62] the Court held that judicial estoppel barred them from relying on Act 6 to rewrite

their agreement.[63]  Accordingly, the Court denied the Debtors' motion in part, explicitly rejecting

the argument that the default provisions of the *Settlement Agreement* were unenforceable as

written.[64]

    Although the Court determined that the Debtors were not entitled to an extended

cure period under Act 6, it still found that Mr. Ciccozzi was "not entitled to forfeiture on the basis

of the untimely—yet subsequently received and retained—payments."[65]  The Court observed that

"[w]hile Ciccozzi had the 'right to insist on strict performance, he was equally at liberty to permit

---

[61]    Butko I, 584 B.R. at 106-108 (emphasis added, footnotes omitted).

[62]    Id. at 106.

[63]    Id. at 108.

[64]    Id. at 109-10; see Order, Case No. 16-23695-GLT, Dkt. No. 221.

[65]    Butko I, 584 B.R. at 109.

a variance.'"[66]  Because the *Settlement Agreement* did not provide a basis for him to continue to receive payments upon a default, he could not unilaterally re-characterize the untimely payments as post-default rent.[67]  As a result, the Court held that his retention of the payments constituted a waiver of their untimeliness and denied stay relief.[68]

Neither party appealed *Butko I.*  To monitor the parties' compliance with the terms of the *Settlement Agreement*, the Court stayed "any enforcement remedies" and indicated that it would "consider lifting the stay without further notice or hearing upon the affidavit of default by [Mr.] Ciccozzi."[69]  Importantly, this procedure did not deny the Debtors an opportunity to be heard on future defaults, but merely warned that a hearing was not guaranteed if they did not raise a substantial defense.

### 4.    The Second Alleged Default and Stay Relief

With the first series of defaults waived and the *Settlement Agreement* unequivocally operative, the Debtors continued their pursuit of a financing transaction that would permit them to pay off Mr. Ciccozzi in a lump sum.[70]  A little over two weeks after *Butko I,* the Court entered an order authorizing the Debtors to borrow $45,000 secured by a lien on the Property for that purpose.[71]  In July 2018, the Debtors reported that they were unable to close on a loan because an

---

[66]  Id. (quoting C. Trevor Dunham, Inc. v. Nemitz, 82 Pa. Super. 382, 384 (Pa. Super. Ct. 1923)).

[67]  Id.

[68]  Id. at 109-10.

[69]  *Order*, Case No. 16-23695-GLT, Dkt. No. 221 at ¶ 6.

[70]  See *Motion to Obtain Post-Petition Secured Credit Pursuant to 11 U.S.C. Sec. 364*, Case No. 16-23695-GLT, Dkt. No. 213.

[71]  *Modified Order of Court*, Case No. 16-23695-GLT, Dkt. No. 227.  Although the Court did not reach this issue, Mr. Ciccozzi raised a technical objection to the proposed interest rate.  See *Response of Ronald A. Ciccozzi to Debtors' Motion to Obtain Post-Petition Secured Credit Pursuant to 11 U.S.C. Sec. 364*, Case No. 16-23695-GLT, Dkt. No. 217; but see *Debtors' Reply to Response of Ronald A. Ciccozzi to Debtors' Motion to Obtain Post-Petition Secured Credit Pursuant to 11 U.S.C. Sec. 364*, Case No. 16-23695-GLT, Dkt. No. 225.

unpaid water bill subsequently increased the amount necessary to grant a lender a first-position lien beyond what the lender was willing to lend.[72]

At a September 2018 status conference, Attorney Short painted a bleak picture. Although the Debtors were then current in their obligation to Mr. Ciccozzi, he represented that financing was no longer practical due to the lender's feasibility concerns.[73]  Worse, the Debtors had fallen seven months behind on their chapter 13 plan obligations and had no ability to cure the arrearage.  As a result, Attorney Short expected the case to be dismissed.

Less than a week later, Mr. Ciccozzi filed an affidavit of default suggesting that the Debtors failed to make their September 2018 payment.[74]  The Debtors promptly responded that Mr. Ciccozzi had no right to relief from stay because he filed his affidavit *three* days after the cure period expired, rather than the *two* required by the *Settlement Agreement*.[75]  Noting that the "law abhors a forfeiture," they emphasized that "[t]he law does **not** permit a party to benefit from a forfeiture unless such party fulfills *all* obligations under the applicable contract, no matter how trivial."[76]

On September 26, 2018, the Court granted Mr. Ciccozzi stay relief in accordance with the *Settlement Agreement*.[77]  The Court rejected the Debtors' "feeble defense," observing that the Court imposed a notification requirement to monitor performance, not to preclude Mr. Ciccozzi

---

[72]    *Report of Financing*, Case No. 16-23695-GLT, Dkt. No. 230.

[73]    Even with the promise of a mortgage, the private lender apparently lost confidence that he would be repaid in the absence of attachable income.

[74]    *Affidavit of Default*, Case No. 16-23695-GLT, Dkt. No. 249.

[75]    *Debtors' Amended Response to Ronald A. Ciccozzi's Request for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 253 at ¶ 5.

[76]    Id. at ¶ 6 (emphasis in original).

[77]    *Order*, Case No. 16-23695-GLT, Dkt. No. 255.

from exercising his remedies if he failed to act timely.[78]   Because the Debtors' offered no
justification for their failure to make the September 2018 payment, the Court found that relief from
stay was warranted.[79]

### 5.    The Motion to Reconsider Stay Relief

The day after stay relief was granted, the Debtors moved for reconsideration
alleging the existence of new facts.[80]   They explained that after the filing of Mr. Ciccozzi's
affidavit, they cured their default by paying $1,675 directly to Mr. Ciccozzi's bank account.[81]
Because Mr. Ciccozzi had not since returned the funds, the Debtors argued that the "law of the
case" from *Butko I* was that the retention of a late payment constituted a waiver of the default.[82]
In further support, they reported a "resurrection" of the financing transaction with a private lender
and suggested that the new loan to pay off Mr. Ciccozzi could close in less than a month if the
Court were to immediately enter the "revised" attached order.[83]   In closing, the Debtors also
purported to "preserv[e] past arguments," reiterating their belief that Act 6 applies to the *Settlement
Agreement* and that they should not be estopped from asserting a longer cure period.[84]

---

[78]   Id. at 3.  The Court further noted that "any delay in filing [the affidavit] would inherently inure to the Debtors' benefit."  Id.

[79]   Id.

[80]   *Motion to Amend Findings of Fact, Alter Judgment, for Relief from Judgment and/or for New Trial*, Case No. 16-23695-GLT, Dkt. No. 257.  The motion does not expressly reference any rules or standards for reconsideration, but based on the pleading's title, the Court presumed it was brought under Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023.

[81]   Id. at ¶ 1.

[82]   Id. at ¶¶ 2-4.

[83]   Id. at ¶ 5.  The Debtors also disclosed that the private lender had already advanced funds in an unspecified amount to help them avoid a default under the *Settlement Agreement*.  Id.

[84]   Id. at ¶ 6.

Mr. Ciccozzi opposed the Debtors' request for reconsideration, denying that he knowingly accepted or retained a late payment.[85]  He asserted that his bank mistakenly allowed the Debtors to directly deposit the funds into his account despite his prior instruction to cease all account activity.[86]  Mr. Ciccozzi alleged that he did not learn of the deposit until their motion was filed, and then promptly returned the funds to the Debtors the next day.[87]

Although the request for reconsideration was premised entirely on the existence of new facts, the Debtors filed a supporting brief focused solely on their "preserved" Act 6 arguments.[88]  The brief was largely an attempt at revisionist history.  To start, the Debtors queried whether the Court-added provision referencing the "applicable cure period" had "special significance" beyond the *Settlement Agreement*'s express cure period expiring on the 16th day of the month.[89]  They also risibly contended that Mr. Ciccozzi indicated "passive consent" to incorporating the notice and cure provisions of Act 6 into the *Settlement Agreement* by withdrawing his motion to vacate it.[90]  The most stunning example, however, was the new gloss placed on *Butko I.*  Although they initially acknowledged that the Court "held" they were judicially estopped from asserting an Act 6 cure period,[91] their characterization immediately shifted to non-binding "dicta" merely suggesting that they "should be judicially estopped."  The Debtors asserted

---

[85]  *Response to Motion to Amend Findings of Fact, Alter Judgment, for Relief from Judgment, and/or New Trial (Response to Motion To Vacate Order Granting Relief)*, Case No. 16-23695-GLT, Dkt. No. 263.

[86]  Id. at ¶¶ 4-5.

[87]  Id. at ¶ 6.

[88]  *Brief in Support of Motion to Amend Finding of Fact, Alter Judgment, for Relief from Judgment and/or For New Trial*, Case No. 16-23695-GLT, Dkt. No. 265.

[89]  Id. at n. 1.

[90]  Id. at n. 2.  Although Mr. Ciccozzi withdrew his motion to vacate the *Settlement Agreement* prior to the Court's ruling on the applicability of Act 6, the Court notes he could have filed a renewed motion for such relief had he lost on that issue.

[91]  Id. at 5.

this reading was justified "because the Court ultimately found that [Mr.] Ciccozzi waived the default by accepting and retaining the Butkos' late cure payment," ignoring the fact their motion explicitly requested a ruling on the applicability of Act 6.[92]

Having reduced the adverse rulings of *Butko I* to dicta, the Debtors apparently believed they were free to re-litigate the applicability of judicial estoppel six months later.  They argued that their on-the-record acceptance of the *Settlement Agreement* and its forfeiture provisions should not be construed as having adopted any position regarding Act 6 at all.[93]  To the contrary, the Debtors contended that Attorney Short simply made a good faith mistake in failing to recognize the Act 6 connection, emphasizing that the issue slipped by Mr. Ciccozzi's counsel, Judge Fitzgerald, and the Court.[94]  They also questioned the Court's finding that the onerous default terms were needed to secure Mr. Ciccozzi's agreement, suggesting instead that he was induced by their agreement to pay roughly $33,000 above the *Lease*'s purchase option.[95]

Even if the facts warranted the conclusion that they "play[ed] fast and loose" with the Court, the Debtors argued that estoppel was an excessive sanction.[96]  The Debtors insisted that an "extension of (at least) 20 days" represented a "relatively minor" harm to Mr. Ciccozzi compared to "enormous" harm they would suffer from the loss of their home and the $221,974

---

[92]     Id. at n. 6.

[93]     Id. at 8.  In support, the Debtors selectively quoted Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 170, 130 S. Ct. 1237, 1249, 176 L. Ed. 2d 18 (2010), for the proposition that statements made relating to the approval of a settlement do not satisfy the first position success requirement of judicial estoppel.  Curiously, this argument is undercut by the very passage they quote in which the Supreme Court of the United States declined to apply judicial estoppel because "*the District Court did not adopt petitioner's interpretation*."  *Brief in Support of Motion to Amend Finding of Fact, Alter Judgment, for Relief from Judgment and/or For New Trial*, Case No. 16-23695-GLT, Dkt. No. 265 at 7 (quoting Id. at 170) (emphasis in original).

[94]     Id. at 9-10.

[95]     Id. at n. 14.

[96]     Id. at 12.

paid to Mr. Ciccozzi.[97]   To afford them the "essential consumer protection" mandated by

Pennsylvania law, they urged the Court to craft some lesser sanction tailored to their alleged

misconduct, such as the imposition of a late fee.[98]  In doing so, the Debtors essentially invited the

Court to re-write the *Settlement Agreement*.

    The Court heard the motion for reconsideration nearly seven months after *Butko I*.

During oral arguments, the Debtors outlined the Court's alleged errors, the perceived unfairness

of the ruling, and their newly conceived strategy to provide a lender with assurance of repayment

through an attachment of a child support stipend.[99]  The Debtors explained that they did not appeal

or seek reconsideration of *Butko I* because they prevailed in denying Mr. Ciccozzi relief on waiver

grounds, rendering the adverse findings unnecessary dicta.[100]  Even still, they admitted the judicial

estoppel ruling would have controlled in the absence of a waiver.[101]   Taken aback, the Court

suggested that the natural conclusion of the Debtors' Act 6 arguments is that there was no meeting

of the minds, and therefore no *Settlement Agreement*.   Surprisingly, Attorney Short agreed that

there was no meeting of the minds on the default provisions, but asserted the incorporation of Act

6 would not destroy the "substance" of the *Settlement Agreement*.[102]

    The Debtors argued that the standard applicable to their motion was a "change in

facts," but placed greater emphasis on their purported ability to close a transaction that would

---

[97]    Id. at 11.

[98]    Id. at 12 (emphasis omitted).

[99]    *Audio Recording of Hearing Held in Courtroom A*, November 2, 2018 at 10:07 a.m.  It is worth noting that
Attorney Short represented that while negotiations with the lender had been ongoing, he only realized this
possible solution to the lender's concerns on the drive to the courthouse that morning.  See id. at 10:22:30
a.m.  If true, it implies that contrary to the representations in the motion for reconsideration, the impediments
to the financing had not been cleared prior to the hearing.

[100]   Id. at 10:17:27 a.m.

[101]   Id. at 10:18:01 a.m.

[102]   Id. at 10:18:11 a.m.

payoff Mr. Ciccozzi.[103]   They desired to proceed through an amendment of the prior financing order, rather than filing a new motion, to enable a faster closing.[104]   The Debtors observed that they would still have little leeway to close, particularly if they did not cure their default, because Mr. Ciccozzi would be entitled to a judgment for possession under the *Settlement Agreement*.[105] Attorney Short explicitly acknowledged that under the relevant case law, a judgment for possession is the equivalent of a sheriff's sale and will cut off any remaining cure rights under Act 6.[106]

      For his part, Mr. Ciccozzi protested the Debtors' efforts to delay him from gaining control of the Property as contemplated under the *Settlement Agreement* and argued that they had not articulated grounds under Rule 60(b) for relief from *Butko I*.   Otherwise, the undisputed material facts did not support reconsideration of the grant of stay relief.

      Ultimately, the Court agreed with Mr. Ciccozzi, finding that the Debtors failed to show any basis for reconsideration.   Noting its frustration with the rehashing of old arguments, the Court indicated that *Butko I* made clear its intent to hold the parties to the *Settlement Agreement* strictly as written and not as modified by Act 6.   The Court repeated its view that if there truly was no meeting of the minds about the default provisions, then there would not have been a settlement at all.   As neither party urged that result, the Court rested its decision on the only critical fact: the Debtors defaulted and did not cure within the time permitted under the *Settlement Agreement*.[107]

---

[103]    Although the Debtors noted their late cure payment to Mr. Ciccozzi in passing, they no longer relied on this point.   The Court presumes this was a tacit acknowledgment that his prompt return of the funds following their motion undercut their assertion of a knowing waiver of the default.   Additionally, Attorney Short struggled to explain the delay in calling attention to the payment until after relief entered.

[104]    Id. at 10:24:35 a.m.

[105]    Id. at 10:24:24 a.m.

[106]    Id. at 10:25 a.m.

[107]    Given the Debtors' payment default and inability to exercise the *Lease*'s expired purchase option, the Court also queried whether invalidation of the *Settlement Agreement* would yield a different outcome.

In closing, the Court once again observed that a final financial resolution would be far preferable

for the parties in the end, but found that the "revised" financing seemed speculative because it was

unclear that the proposed attachment was legally viable or that it would satisfy the lender.

### 6.    The Judgment for Possession

With reconsideration denied, the parties presented several oral motions to the Court.

The Debtors requested a stay pending a possible appeal and (alternatively or in conjunction) an

additional 60 days to vacate the Property.[108]    In turn, Mr. Ciccozzi asked the Court to enter a

judgment for possession as contemplated by the *Settlement Agreement*.    The Court took the matters

under advisement and directed supplemental briefing on the Court's jurisdiction to enter the

proposed judgment for possession.

Both parties filed timely briefs conceding the Court had subject matter jurisdiction

and authority to enter the proposed judgment for possession.[109]    Mr. Ciccozzi also argued that

permissive abstention would be inappropriate because it would unreasonably delay his entitlement

to a judgment arising directly from the bankruptcy proceedings.[110]    In contrast, the Debtors

asserted abstention was "arguably" mandatory, but their rationale simply attacked the Court's

underlying conclusion that there had been an uncured default at all:

> As a matter of comity, a Pennsylvania state court should determine what is
> the proper procedure for Ciccozzi to take both legal and equitable title to
> the Property in light of its holding in *Anderson Contracting Company v.*
> *Daugherty*, 274 Pa. Super. 13, 17 (1979).    The Debtors have asserted an

---

[108]    Since the *Settlement Agreement* required the Debtors to voluntarily vacate the Property 30 days after the expiration of the cure period (October 17, 2018), their continued possession coupled with their request would have granted them a total of 76 days more than the *Settlement Agreement* affords.

[109]    See *Supplemental Brief in Support of Statement of Jurisdiction for Request to Enter Judgment for Possession*, Case No. 16-23695-GLT, Dkt. No. 269 at 2 (asserting that the parties had consented to the Court's authority to enter the judgment as an essential part of the *Settlement Agreement*); *Debtors' Brief on Whether the Court Has Jurisdiction to Enter an Order of Possession (... And Should)*, Case No. 16-23695-GLT, Dkt. No. 272 at 6 (acknowledging that the Court retained sufficient "protective" jurisdiction).

[110]    *Supplemental Brief in Support of Statement of Jurisdiction for Request to Enter Judgment for Possession*, Case No. 16-23695-GLT, Dkt. No. 269 at 6-7.

"Act 6" defense to this late payment and this Court should allow a state court to determine whether this defense is valid, or not, *under state law*.

\* \* \*

The Court should abstain from entering an order of possession as a matter of comity with a state court, particularly when the *type of collection procedure* and *the Debtor's defenses* to that procedure are *disputed* and *solely based on Pennsylvania law* ... and by the grant of relief from the stay, the estate has relinquished its interest in the property, albeit not irrevocably.[111]

In other words, the Debtors wanted the Court to abstain from not only the entry of a judgment for possession, but from all matters already decided since *Butko I*. Neither party requested a hearing.

On December 4, 2018, the Court entered a *Judgment for Possession* in favor of Mr. Ciccozzi effective January 19, 2019 ("Judgement").[112] In a separate order, the Court denied the Debtors' oral motion for a stay pending appeal without prejudice, noting that such relief was premature absent an appeal.[113] The Court also denied their request for 60 days to leave the Property as moot because the Court stayed the effectiveness of the *Judgment*.[114] The Debtors did not appeal either the denial of their motion for reconsideration or the *Judgment*.

### 7.    Dismissal and Mr. Ciccozzi's Request for Emergency Relief

Soon after, the chapter 13 trustee moved to dismiss the Debtors' case, alleging that they were nearly 13 months in arrears under their confirmed plan.[115] As the Debtors did not oppose dismissal, the Court dismissed their chapter 13 case without prejudice on March 4, 2018.[116]

---

[111]    *Debtors' Brief on Whether the Court Has Jurisdiction to Enter an Order of Possession (... And Should)*, Case No. 16-23695-GLT, Dkt. No. 272 at 7-8 (emphasis in original, footnote omitted).

[112]    *Judgment for Possession*, Case No. 16-23695-GLT, Dkt. No. 274.

[113]    *Order*, Case No. 26-23695-GLT, Dkt. No. 273.

[114]    Id.

[115]    *Trustee's Certificate of Default Requesting Dismissal of Case*, Case No. 16-23695-GLT, Dkt. No. 277.

[116]    *Order*, Case No. 16-23695-GLT, Dkt. No. 279.

Four days later, Mr. Ciccozzi filed emergency motions seeking "enforcement of prior orders" and an expedited hearing.[117]  Apparently, despite this Court's past rulings and refusal to belatedly abstain, the Debtors commenced an action in the Court of Common Pleas of Beaver County ("State Court") seeking a declaratory judgment that Mr. Ciccozzi was required to provide them with an Act 6 notice and requesting damages arising from his failure to do so.[118]  Although the *Judgment* was recorded with the Beaver County Prothonotary, the State Court stayed Mr. Ciccozzi from taking possession of the Property pending further proceedings.[119]  Thus, given the Debtors' "blatant attempt at forum shopping" "to circumvent this Court's prior Orders,"[120] Mr. Ciccozzi requested the Court: (1) "reaffirm" its prior Act 6 rulings; (2) stay the declaratory judgment action in the State Court; and (3) reinstate the eviction date of March 22, 2019, set by the Beaver County Sheriff's Office and direct the U.S. Marshals to assist if the sheriff does not compel eviction.[121]

On March 11, 2018, the Court denied the motions without a hearing, finding that its prior rulings were "self-evident and do not require amplification or reaffirmation" and that its jurisdiction to enjoin a state court proceeding was tenuous since the Debtors' case had been dismissed.[122]  The Court therefore concluded that "the interests of finality, comity, and judicial

---

[117]    See *Emergency/Expedited Motion for Enforcement of Prior Orders of Court and Equitable Relief*, Case No. 16-23695-GLT, Dkt. No. 286; *Motion for Expedited Hearing on Emergency Motion for Enforcement of Order of Court and Equitable Relief*, Case No. 16-23695-GLT, Dkt. No. 287.

[118]    *Emergency/Expedited Motion for Enforcement of Prior Orders of Court and Equitable Relief*, Case No. 16-23695-GLT, Dkt. No. 286 at ¶ 9.

[119]    Id. at ¶¶ 12-15.

[120]    Id. at ¶¶ 21-22.

[121]    Id. at 6.

[122]    *Order*, Case No. 16-23695-GLT, Dkt. No. 288 at 2.

22

economy all militate towards the resolution of these matters by the [State Court]" since its jurisdiction and authority were unquestioned.[123]

### C. The Intervening State Court Proceedings

Over 20 months later, the State Court directed Mr. Ciccozzi to "show cause how this Court . . . could possibly enforce the [*Judgment*] without running afoul of Act 6 . . . ."[124] The Debtors were also required to show cause regarding their claim for attorney's fees and afforded a chance to reply to Mr. Ciccozzi's response.[125] Issued "after review of the record" and following a pretrial conference, the State Court order also contained several "findings," including that the *Judgment* was "not a confessed judgment."[126]

On March 18, 2020, the State Court entered a final *Decision and Order* in the declaratory action.[127] Judge Dale Fouse held that the Debtors were barred from challenging *Butko I* by *res judicata*:

> In the Bankruptcy Opinion, the court found and held that the Butkos are judicially estopped from pleading that Ciccozzi must provide Act 6 notices before enforcing the settlement agreement between the parties that was part of the Bankruptcy and which gives Ciccozzi possession upon the Butkos' breach.
>
> While we may have reached a different result were we to decide the Act 6 issue raised in the Declaratory Judgment proceedings, we cannot decide that issue as it has been conclusively decided against the Butkos in the Bankruptcy Case. The Bankruptcy Court is a court of coordinate jurisdiction. Foreign judgments are entitled to full faith and credit so long as the foreign court had jurisdiction and the defendant had the opportunity to appear and defend. The docket of the Bankruptcy establishes that the Butkos raised the Act 6 issues before Judge Taddonio. The Butkos had argued that Act 6 applies. Judge Taddonio phrased the issue as "whether .

---

[123]    Id.

[124]    *Exhibit 6*, Dkt. No. 56-3 at ¶ 2.

[125]    Id. at ¶¶ 3-4.

[126]    Id. at ¶ 1.c.

[127]    *Decision and Order*, Dkt. No. 15-1.

. . [the Court] should deem the settlement agreement to be a land installment contract, to which Act 6 applies and if that has bearing on the notice provisions." In the Bankruptcy Court's Opinion, the Court concluded that the settlement agreement is a land installment contract and, therefore, meets the definition of a "residential mortgage" under Act 6 to which its protections apply. Despite this conclusion, the Bankruptcy Court explained: "[it] is not convinced the Settlement Agreement runs afoul of Act 6—and even [sic] it did, the Debtors are judicially estopped from asserting this position to avail themselves of its protections."[128]

Judge Fouse's ruling is significant in two respects. First, he rejected the Debtors' assertion that this Court's judicial estoppel ruling was merely dicta.[129] Second, he noted that despite their obvious disagreement with *Butko I*, the Debtors chose not to appeal.[130]

Absent any "remaining issues of material fact," Judge Fouse terminated the stay preventing Mr. Ciccozzi from gaining possession of the Property.[131]

### D.   The 2020 Bankruptcy

Roughly a month after their state court defeat, the Debtors commenced the present chapter 13 case on April 13, 2020 with Attorney Feldman as their counsel.[132] Ten days later, Mr. Ciccozzi moved for stay relief under section 362(d)(1) and (d)(4)(B) based on the default provisions of the *Settlement Agreement* and his lack of adequate protection.[133] The Debtors opposed, arguing that their continued possessory interest in the Property was entitled to protection while they sought to cure the default under the *Settlement Agreement* through a chapter 13 plan.[134]

---

[128]   Id. at 2 (citations omitted).

[129]   Id. at 3.

[130]   Id.

[131]   Id. at 3-4.

[132]   Case No. 20-21255-GLT.

[133]   *Motion for Relief from the Automatic Stay and for Equitable Relief*, Dkt. No. 15.

[134]   *Debtors' Response to Motion for Relief from Stay and for Equitable Relief filed by Ronald A. Ciccozzi*, Dkt. No. 26.

If this sounds familiar, it is because this was the same tack they adopted in February 2017 prior to mediation and the *Settlement Agreement*.

The Debtors filed a chapter 13 plan ("Plan") concurrent with their response.[135]  The Plan contemplated paying all creditors (including Mr. Ciccozzi) in full from a sale of the Property by May 31, 2021.[136]  Meanwhile, the Debtors proposed to make 11 monthly payments of $727.16 to Mr. Ciccozzi, inclusive of a monthly allotment of $100 for insurance.[137]

The Court heard the matter on May 20, 2020.  Although the Debtors' position was clear during oral argument, the contours of their rationale were difficult to follow.  They often conflated their possessory interest (which by itself was enough to trigger the automatic stay in the first instance) with an interest that could be cured under section 1322 (which would be grounds to deny stay relief).  The confusion stemmed in part from the Debtors' reliance on *In re Grove*,[138] a case that allowed chapter 13 debtors to cure a default under a land installment contract despite the entry of a judgment for possession because "the property was not sold at foreclosure."[139]  Indeed, as to the need for a foreclosure sale, they posited that there was no difference between an installment land contract and a mortgage.  Still, they struggled to explain the legal significance or purpose of the *Judgment* in light of this argument.  In the end, the Court took the matter under advisement to further review the relevant case law.

---

[135]     *Chapter 13 Plan dated 5/7/2020*, Dkt. No. 25.

[136]     Id. at ¶ 3.3.

[137]     Id.

[138]     Bankers Tr. Co. v. Grove (In re Grove), 208 B.R. 845 (Bankr. W.D. Pa. 1997).

[139]     Id. at 847.

Two days after the hearing, the Debtors filed a memorandum of law focusing on the nature of their alleged rights to the Property.[140]  Perhaps not surprisingly, the unifying theory of their argument was premised on Act 6: installment land contracts, such as the *Settlement Agreement*, are security devices subject to Act 6 and thus the Debtors are entitled to Act 6 protections, including the right to cure up until one hour before a sheriff's sale.[141]  The Debtors argued that "[t]o rule otherwise would obliterate the statutory protections of Act 6 and ignore the clear holding of *Anderson Contracting*."[142]  Their memorandum did not mention *Butko I* or the legal effect of the *Judgment*.[143]

1.    ***Butko II***

On July 1, 2020, the Court issued *Butko II*, finding that relief from stay was warranted because the Debtors no longer had any cure rights under applicable nonbankruptcy law.[144]  The Court engaged their assertion directly, framing the analysis around the question of whether a sheriff's sale was necessary to terminate their rights under the *Settlement Agreement*:

> The Court previously held that the *Settlement Agreement* was in the nature of a novation and was itself an "installment land contract."  Under Pennsylvania law, installment land contracts are treated as security instruments.  Generally, the Loan Interest and Protection Law, more commonly known as "Act 6," provides that a "residential mortgage obligation" may be cured "at any time at least one hour prior to the commencement of bidding at a sheriff's sale" of the obligor's interest in the residence.  While there is no doubt that installment land contracts fall within Act 6, it must be applied *by analogy* because the vendor's retention of legal title until completion of the contract renders a sheriff's sale unnecessary.  Instead, a vendee's equitable interest in the subject property is extinguished

---

[140]    *Debtors' Memorandum at Law on Why They Have an Interest in Their Residence which is Protected by the Automatic Stay*, Dkt. No. 39.

[141]    Id. at 1-3.

[142]    Id. at 3 (citing Anderson Contracting Co. v. Daugherty, 417 A.2d at 1232.

[143]    The Court notes that the Debtors' response subtly hinted that they viewed *Butko I* and Judge Fouse's decision as relating solely to their entitlement to Act 6 notices.  *See Debtors' Response to Motion for Relief from Stay and for Equitable Relief Filed by Ronald A. Ciccozzi*, Dkt. No. 26 at ¶¶ 7-8.

[144]    Butko II, 617 B.R. at 534.

> through judicial proceedings.  Therefore, applying the Act 6 cure period by analogy, courts hold that a vendee may cure a default under an installment land contract up to one hour prior to entry of a judgment terminating the vendee's rights.[145]

To the extent that *In re Grove* suggested otherwise by stating that "Debtors' possessory interest was not terminated prepetition because the property was not sold at foreclosure,"[146] the Court determined that was "erroneous dicta," noting that the judgment for possession in that case was not a final order.[147]  Because the *Judgment* against the Debtors is a final, unappealable order, the Court found that their "equitable interest in the property ha[d] long since terminated, leaving them with no right to cure their default under state or federal law."[148]

The Court did not specifically state when the Debtors' interest terminated, only that it had done so by the time the *Judgment* became final.  Though no one mentioned this at the time, the *Settlement Agreement* provides that "all rights that [the Debtors] may have in the Property shall finally and permanently terminate" upon the expiration cure period on the 17th day of the month.[149]  As a result, the Court's approach to *Butko II* answered the broader Act 6 question in an effort to put the matter to bed rather than simply rely on the explicit, though controversial, terms of the *Settlement Agreement*.  In hindsight, the fact that the Court considered an Act 6 argument appears to have only emboldened the Debtors to press harder.

---

[145]    Butko II, 617 B.R. at 534-35 (emphasis in original, footnotes omitted).  See In re Callahan, No. CIV.A. 03-6447, 2004 WL 350753, at *3 (E.D. Pa. Jan. 30, 2004); In re Belmonte, 240 B.R. 843, 852 (Bankr. E.D. Pa. 1999), aff'd in part, rev'd in part, 279 B.R. 812 (E.D. Pa. 2001); Bankers Rowe v. Connors (In re Rowe), 110 B.R. 712, 722 (Bankr. E.D. Pa. 1990).

[146]    In re Grove, 208 B.R. at 847.

[147]    Butko II, 617 B.R. at 536.

[148]    Id.

[149]    See Exhibit A, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 15.

### 2.    The *Motion*

Less than two weeks later, the Debtors filed the *Motion*, contending that the Court "overlooked"[150] two important issues in *Butko II*: (1) that the *Judgment* is void because Mr. Ciccozzi failed to give them an Act 6 notice; and (2) even if the *Judgment* is not void, it is a "confessed judgment" and not a final order until "conformed" under Act 6.[151]  Of course, these issues were never raised prior to the *Motion* because the Debtors deflected away any consideration of the *Judgment* in favor of their contention that a foreclosure sale was the only way to terminate their equitable interest.   More strikingly, this rationale compelled the Debtors to once again resuscitate the now twice rejected claim that *Butko I*'s judicial estoppel ruling is merely dicta.[152]

In the first instance, the Debtors asserted that it is well-settled under Pennsylvania law that a "[p]roper notice pursuant to Act 6 is a prerequisite to the court's subject matter jurisdiction over the mortgagee's foreclosure action."[153]   Thus, because Mr. Ciccozzi did not provide the notice, they argued that this Court lacked subject matter jurisdiction to enter the *Judgment* and it is now void.[154]  Although the Debtors observed that a party may be relieved from a void judgment under Rule 60(b)(4), they did not seem to actually seek this relief or believe it is necessary.[155]  Instead, they attacked *Butko II*, asserting that it was "clear legal error" for the Court to grant Mr. Ciccozzi relief from stay based on the void *Judgment*.[156]

---

[150]     *Motion*, Dkt. No. 52 at ¶ B.

[151]     Id. at 1.

[152]     Id. at n. 2.  The Debtors do not reference Judge Fouse's decision at all.

[153]     Id. at ¶ 8.

[154]     Id. at ¶¶ 9-10.

[155]     Id. at ¶ 9.

[156]     Id. at ¶ 10.

Alternatively, the Debtors argued that the *Judgment* is a "judgment by confession" which is essentially rendered "a nullity" by Act 6.[157]   They contended the *Judgment* is by confession because it is "*solely authorized* by an instrument," "*requires no answer or hearing before its entry*," and "allows entry of judgment by the Prothonotary under the power contained in the instrument."[158]   The Debtors asserted that Act 6 does not permit execution on a confessed judgment until a creditor complies with the notice requirements and files a separate civil action to conform the judgment.[159]   Relying on *In re Olick*, the Debtors posited that the *Judgment* is not final because Act 6 requires the prosecution of a conforming action "'in which the parties are free to litigate the matter anew.'"[160]   As a result, they maintained the Court's reliance on the *Judgment* was clearly erroneous.[161]

Under either permutation, the Debtors asserted the *Judgment* did not terminate their equitable interest in the Property or their right to cure a default up to an hour before the sheriff's sale.[162]   In sum, they argued that the Court must vacate the order granting Mr. Ciccozzi stay relief to avoid "manifest injustice," particularly in light of the Court's alleged errors, the importance of Act 6 protections, their impending loss of equity, and Mr. Ciccozzi's undeserved windfall.[163]

---

[157]     Id. at ¶ 14 (quoting In re Olick, 221 B.R. 146, 151 (Bankr. E.D. Pa. 1998)) (internal quotation marks omitted).

[158]     Id. at ¶ 11 (emphasis in original).

[159]     Id. at ¶ 12 (citing 41 Pa. Stat. Ann. §§ 403(a), 407(a)).

[160]     Id. at ¶ 14 (quoting In re Olick, 221 B.R. at 151).

[161]     Id. at ¶ 16.

[162]     Id. at ¶ 15.

[163]     Id. at ¶ 17.

### 3.    The *Order to Show Cause* and *Response*

Perceiving the *Motion* as a brazen collateral attack on *Butko I*, the Court entered the

*Order to Show Cause* two days later.[164]  In the *Order to Show Cause*, the Court listed several issues

that seemingly rendered the *Motion* inherently flawed:

> 1.    Based on the Debtors' own representations to this Court, the [State Court] "earlier ruled that the right to a judgment for possession under the [*Settlement*] *Agreement* was not a confessed judgment provision,"[165] barring the Court from re-litigating this issue under *Rooker-Feldman* doctrine.[166]

> 2.    The Debtors' assertion that *Judgment* is a "confessed judgment" because they had no opportunity to answer before entry is factually inaccurate as the Court heard from the parties and solicited briefing before entering the *Judgment*.

> 3.    This Court has previously held that the Debtors are judicially estopped from raising Act 6 notice defenses.[167]  They did not appeal and the ruling is now final.

> 4.    The [State Court] held that this Court's judicial estoppel decision was *res judicata* in the state court [proceedings] initiated by the Debtors, expressly rejecting their argument that it was merely non-binding dicta.[168] Thus, any further attempt by the Debtors to assert Act 6 notice defenses is also barred by both *res judicata* and *Rooker-Feldman*.

> 5.    The Debtors continue to argue that their rights under Act 6 are not terminated until an hour before a sheriff's sale without addressing: (a) that installment land contracts are not enforced by sheriff's sale;[169] and

---

[164]    *Order to Show Cause*, Dkt. No. 54.

[165]    *Debtors' Response to Motion for Relief from Stay and for Equitable Relief filed by Ronald A. Ciccozzi*, Dkt. No. 26 at n. 4.

[166]    See Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573, 580 n. 13 (3d Cir. 2005) ("The doctrine takes its name from two Supreme Court cases, viz., Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).").

[167]    Butko I, 584 B.R. at 99.

[168]    See *Decision and Order*, Dkt. No. 15-1.

[169]    Butko II, 617 B.R. at 535.

therefore, (b) the Court's conclusion that Act 6 applies to installment land contracts *by analogy*.[170]

The Court directed the Debtors and Attorney Feldman to show cause why the Court should not deny the *Motion* and impose sanctions under Bankruptcy Rule 9011(b)(1)-(3) considering its many apparent deficiencies.[171]  They were also directed to file a written response addressing each of the issues identified by the Court and attach any relevant state court rulings.[172]  The Court scheduled the *Motion* and *Order to Show Cause* to be heard together.[173]

The Debtors filed the *Response* timely, asserting that sanctions were unwarranted and reiterating their request for reconsideration.[174]  In broad strokes, which the Court will elaborate upon below,[175] the *Response* pressed the assertion that *Butko I*'s statements about judicial estoppel are non-binding "dicta" to effectively disclaim the significance of all proceedings prior to *Butko II*.[176]  Having thus conjured a fresh slate, the Debtors copied their arguments about the invalidity of the *Judgment* from the *Motion*,[177] adding only a terse statement in a footnote suggesting that the actual process they received is irrelevant to whether the *Judgment* was confessed.[178]  They also argued that the Court gave inadequate weight to *In re Grove* in its *Butko II* analysis, contending that it is the only persuasive authority to adhere to the mandate of treating an installment land contract like a mortgage for purposes of foreclosure and execution.[179]

---

[170]   Id.

[171]   *Order to Show Cause*, Dkt. No. 54 at 4.

[172]   Id.

[173]   Id.

[174]   *Response*, Dkt. No. 56 at 17.

[175]   See Section III.A, *infra*.

[176]   *Response*, Dkt. No. 56 at ¶¶ 25-36.

[177]   Id. at ¶¶ 13-24.

[178]   Id. at n. 15.

[179]   Id. at ¶¶ 3-12.

Mr. Ciccozzi filed a combined response to the *Motion* and *Response* urging the Court to deny reconsideration and award him his reasonable attorney's fees.[180]

### 4.     The Show Cause Hearing

The Court heard these matters on August 26, 2020.  Given the multiple layers of procedural history and differing standards applicable to each, the Court determined a structured oral argument was necessary to prevent the conflation of issues.  As previewed by the *Order to Show Cause*, the Court sought to isolate each component of the Debtors' argument to more directly address the Court's concerns and emphasize the seeming logical gaps.  Unfortunately, the effort was largely an exercise in futility.  No matter how pointed the question, the answer elicited was invariably a generalized statement taken from their submissions without elaboration.  For example, when the Court asked how its judicial estoppel ruling could be dicta when Act 6 was repeatedly put before the Court and rejected, Attorney Feldman could only parrot that *Butko I* was decided on waiver grounds.

Even so, there were a few important takeaways from the oral argument.  The Debtors had no response to the obvious problem that their dicta argument is undermined by all proceedings and rulings after *Butko I*.[181]  With respect to the *Judgment*, they agreed that the *Settlement Agreement* granted the Court subject matter jurisdiction, but argued it was conditioned on Mr. Ciccozzi first complying with Act 6.[182]  After reviewing a copy of Judge Fouse's order stating that the *Judgment* was "not a confessed judgment,"[183] which had not been part of the record previously, the Court agreed that it was not a final order.  The Debtors then clarified their view

---

[180]     *Ciccozzi Response*, Dkt. No. 60 at 1-4.

[181]     *Audio Recording of Hearing Held in Courtroom A*, August 26, 2020 at 1:39:36 p.m.

[182]     Id. at 1:52:55 p.m.

[183]     *Exhibit 6*, Dkt. No. 56-3 at ¶ 1.c.

that the *Judgment* was confessed, explaining that it largely turned on the unavailability of Act 6 notice defenses and admitted there was "nothing particularly offensive about the process" they received.[184]  They also acknowledged that a challenge to the *Judgment* was the "heart" of the desired relief and asked the Court to construe their submissions to that effect, yet were unable to explain why they did not seek relief under Rule 60(b)(4) or how the standard would be satisfied.[185]  Finally, although they disagree with *Butko II*'s conclusion that Act 6 applies to installment land contracts by analogy, they could not identify any authority directing that one can be foreclosed only by a sheriff's sale.[186]

Mr. Ciccozzi offered only a brief response, arguing that the Debtors had not shown a basis for relief under Rule 60(b).  He disputed the Debtors' claim to equity in the Property, noting that the equity now belongs to him since their cure rights have terminated.  Mr. Ciccozzi also urged that sanctions, though an extraordinary remedy, would be appropriate for deterrence given that the Debtors have sought to re-litigate the same issues half a dozen times.

At the end of the hearing, the Court took both the *Motion* and the *Response* under advisement given the gravity of the issues at bar.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

---

[184]    *Audio Recording of Hearing Held in Courtroom A*, August 26, 2020 at 1:48:03 p.m.

[185]    Id. at 1:58:00 p.m.

[186]    Id. at 2:18:20 p.m.

### III.    POSITIONS OF THE PARTIES

#### A.    <u>The Debtors</u>

Although the Debtors' position was summarized throughout the background section of this memorandum, the procedural posture of this case—which includes the *Order to Show Cause*—mandates a pause to digest how each argument fits (or does not) within the greater context. Considering how these proceedings unfolded, it is doubtful that the Court's chronological summary does that coherently, particularly given the Debtors' overlapping and alternative theories. It is also important to reflect on the relative weight of the support cited for each of their contentions.

The overarching element that connects the Debtors' disparate assertions into a cohesive position is Act 6. Relying on *Anderson Contracting Co.*, the Debtors urge that "a real estate security transaction, such as [an] installment land contract, should not be denied treatment as a 'residential mortgage'" and "in particular, the cure provisions of Section 404" of Act 6.[187] As a result, they argue that they may cure their default under the *Settlement Agreement* at "any time at least one hour prior to the commencement of bidding at a sheriff sale."[188] The Debtors also insist that they must be given the statutory form of notice at least 30 days before Mr. Ciccozzi can take any further legal action.[189] They contend that compliance with this requirement is jurisdictional.[190]

Under that framework, the Debtors posit that Mr. Ciccozzi's undisputed failure to provide them an Act 6 notice means that their right to cure their default under state law never

---

[187]    <u>Anderson Contracting Co. v. Daugherty</u>, 417 A.2d at 1232. The Court previously held that the *Settlement Agreement* is an installment land contract. <u>See</u> <u>Butko I</u>, 584 B.R. at 102-04.

[188]    41 Pa. Stat. Ann. § 404(a).

[189]    <u>See</u> 41 Pa. Stat. Ann. § 403(a).

[190]    <u>See</u> <u>Bankers Tr. Co. v. Foust</u>, 424 Pa. Super. 89, 92, 621 A.2d 1054, 1056 (1993); <u>Philadelphia Hous. Auth. v. Barbour</u>, 405 Pa. Super. 140, 143, 592 A.2d 47, 48 (1991), <u>aff'd</u>, 532 Pa. 212, 615 A.2d 339 (1992); <u>Main Line Fed. Sav. & Loan Ass'n v. Joyce</u>, 632 F. Supp. 9, 10 (E.D. Pa. 1986).

terminated. Once in bankruptcy, sections 1322(b)(5) and (c) permitted them to cure their default under the *Settlement Agreement* within a "reasonable time" through a chapter 13 plan.[191] Thus, following their logic, the Court should have denied Mr. Ciccozzi stay relief in *Butko II*.

Obviously, that did not happen. Instead, the Court granted relief in *Butko II*, reasoning that section 404(a) of Act 6 applies to installment land contracts by analogy such that any cure rights expire one hour before the entry of a judgment for possession.[192] The Debtors now offer three explanations why the analysis of *Butko II* is clearly erroneous. The crux of each theory is that the *Judgment* lacks any real legal significance. Remarkably, they approach reconsideration as if *Butko II* occurred in a vacuum, focusing entirely on upsetting it without concern for how their arguments correlate to the history of proceedings.

To start, the Debtors argue that the *Judgment* is void because the absence of a prior Act 6 notice deprived this Court of subject matter jurisdiction to enter the *Judgment* when it did.[193] They do not deny that the *Settlement Agreement* generally affords the Court subject matter jurisdiction, but submit that the jurisdiction to enter a judgment for possession is conditional. Consistent with their narrow view, the Debtors seem content to simply ignore the *Judgment* rather than seek relief from it under Rule 60(b)(4).[194] They do note, however, that a void judgment cannot be validated by the passage of time.[195]

Next, the Debtors assert that the *Judgment* is a "judgment by confession" which must be conformed in a separate civil action before execution can occur.[196] Thus, if Act 6 requires

---

[191]    See 11 U.S.C. §§ 1322(b)(5), (c).

[192]    Butko II, 617 B.R. at 535.

[193]    *Motion*, Dkt. No. 52 at ¶¶ 7-10; *Response*, Dkt. No. 56 at ¶¶ 13-18.

[194]    *Motion*, Dkt. No. 52 at ¶¶ 9-10; *Response*, Dkt. No. 56 at ¶ 17.

[195]    *Motion*, Dkt. No. 52 at n. 5 (citing Driscoll v. Arena, 2019 Pa. Super 190, 213 A.3d 253, 257 (2019)).

[196]    *Motion*, Dkt. No. 52 at ¶ 12 (citing 41 Pa. Stat. Ann. § 407); see also *Response*, Dkt. No. 56 at ¶ 21.

the prosecution of a conforming action, they argue that it naturally follows that the *Judgment* cannot be a final judgment.[197]  The Debtors cite *In re Olick* for the proposition that "section 407 essentially renders [confessed judgments] a nullity."[198]  That said, they are less clear why the *Judgment* is confessed.  At first, Debtors seemed to argue that the *Judgment* was confessed by virtue of the procedure outlined in the *Settlement Agreement* and without regard to the judicial process they actually received prior to its entry.[199]  During oral arguments, however, they cast the lack of an Act 6 notice as the critical procedural defect, suggesting that this is not truly an alternative argument since the *Judgment* is allegedly void for the same reason.

Third, the Debtors urge that *Butko II*'s "by analogy" application of Act 6 to determine when cure rights under an installment land contract terminate is simply wrong.[200]  They point out that two of the cases which the Court relied on, *In re Belmonte*[201] and *In re Callahan*,[202] did not involve installment land contracts subject to Act 6.[203]  With respect to the third, *In re Rowe*,[204] the Debtors contend that the passage suggesting a "by analogy" application of Act 6 to a judgment for possession is unpersuasive dicta.[205]  They posit that *In re Rowe*, unlike *In re Grove*, fails to honor the directives of *Anderson Contracting Co.* to treat installment land contracts as

---

[197]    *Motion*, Dkt. No. 52 at ¶ 14; *Response*, Dkt. No. 56 at ¶¶ 23- 24.

[198]    *In re Olick*, 221 B.R. at 151.

[199]    See *Motion*, Dkt. No. 52 at ¶¶ 11-14; *Response*, Dkt. No. 56 at ¶¶ 19-24.

[200]    See *Response*, Dkt. No. 56 at ¶¶ 5-12.  Notably, this argument was raised only in the *Response* to the *Order to Show Cause*, and not in the *Motion*.

[201]    In re Belmonte, 240 B.R. 843, 850 (Bankr. E.D. Pa. 1999), aff'd in part, rev'd in part, 279 B.R. 812 (E.D. Pa. 2001).

[202]    In re Callahan, No. CIV.A. 03-6447, 2004 WL 350753, at *3 (E.D. Pa. Jan. 30, 2004).

[203]    *Response*, Dkt. No. 56 at ¶ 8.

[204]    In re Rowe, 110 B.R. at 722.

[205]    *Response*, Dkt. No. 56 at ¶¶ 9-11.

36

residential mortgages and elevate substance over form.[206]  While the Debtors insist that there is no authority for the proposition that a sheriff's sale is *not* needed to terminate a "mortgagor's" interest in an installment land contract governed by Act 6, they concede that there is no authority directly supporting a contrary assertion either.[207]

Ultimately, much of this hinges on the availability of an Act 6 notice defense, which the Debtors do not deny *Butko I* at least implies that they are judicially estopped from asserting. But they dismiss such statements as unnecessary dicta, stressing that only Mr. Ciccozzi's waiver of the payment default was necessary to *Butko I*'s holding.[208]  Though Judge Fouse concluded otherwise, the Debtors circularly dismiss his decision by alleging that this Court's dicta is not a proper basis for *res judicata*.[209]  In any event, they bafflingly argue that *Rooker-Feldman* cannot apply to his decision because the federal decision (*Butko I*) preceded it.[210]

Curiously, the Debtors also distance *Butko II* from *Butko I*, suggesting without explanation that the Court did not "apparently" adopt its prior dicta.[211]  Given *Butko I*'s purported flaws, they caution the Court against doing so now.[212]  In particular, the Debtors argue that the Court "applied [judicial estoppel] in a questionable context, negotiations and representations surrounding a settlement agreement, without clear findings of fact to support its application."[213]

---

[206]    Id. at ¶¶ 11.a, b.

[207]    Id. at ¶ 11.c.

[208]    *Motion*, Dkt. No. 52 at n. 2; *Response*, Dkt. No. 56 at ¶¶ 25-26.

[209]    *Response*, Dkt. No. 56 at ¶ 36.

[210]    Id. at ¶¶ 34-36.

[211]    Id. at 27.

[212]    Id. at ¶¶ 28-29.

[213]    Id. at ¶ 28.

They also assert that the Court ignored Third Circuit precedent by applying the doctrine in a heavy-handed manner where a lesser sanction would have sufficed.[214]

Finally, the Debtors urge that reconsideration is necessary to avoid a manifest injustice.[215]  They admit that the standard is "exceptionally narrow" and assert that granting Mr. Ciccozzi stay relief was "fundamentally unfair in light of the governing law."[216]  Unsurprisingly, the "governing law" that the Debtors rely on is Act 6.  They outright accuse the Court of unjustly denying them "the most important homeowner protection provided by Pennsylvania law"[217] in knowing derogation of the "public policies concerning the protection of residential properties."[218]  In support, the Debtors emphasize their distaste for the Court's application of judicial estoppel and their contention that the *Judgment* is void or confessed.[219]  The inherent complexity of the averment is that they appear to be asking for relief beyond vacating stay relief.  In any event, the Debtors contrast the potential loss of about $190,000 in equity against the remaining $35,000 owed to Mr. Ciccozzi as evidence of unfairness.[220]  They also point to the fact that they have been making plan payments and that they propose to sell the Property within a year.[221]

For all these reasons, the Debtors and Attorney Feldman maintain that sanctions are inappropriate and reconsideration should be granted.

---

[214]    Id.

[215]    *Motion*, Dkt. No. 52 at ¶ 17.

[216]    Id. at ¶ 3.

[217]    *Response*, Dkt. No. 56 at ¶ 29 (emphasis omitted).

[218]    *Motion*, Dkt. No. 52 at ¶ 17.c; see also *Response*, Dkt. No. 56 at ns. 9, 12.

[219]    *Motion*, Dkt. No. 52 at ¶ 17.a, b; see also *Response*, Dkt. No. 56 at ¶¶ 28-29.

[220]    *Motion*, Dkt. No. 52 at ¶¶ 17.d, g; *Response*, Dkt. No. 56 at n. 1.  The Debtors also make much of the fact that to date Mr. Ciccozzi has received more than the original purchase price agreed to in 2009.  *Response*, Dkt. No. 56 at ¶ 2.

[221]    *Motion*, Dkt. No. 52 at ¶¶ 17.e, f.

### B.    Mr. Ciccozzi

Mr. Ciccozzi argues that relief under Rules 59(e) or 60(b) is improper.[222] He asserts that the Debtors' arguments are not a charge against the Court's jurisdiction or its authority to enter the *Judgment*, but yet another challenge to *Butko I*.[223]  Mr. Ciccozzi also takes issue with their tactics, noting that rather than filing an appeal, the Debtors have abusively launched incessant collateral attacks to intentionally cause unnecessary delay and increased litigation costs.[224] Accordingly, he suggests that an award of his reasonable attorney's fees would be an appropriate sanction to deter such practices.[225]

## IV.    DISCUSSION

It is fundamental to our legal system that all litigation must end in due course and reach a resolution that cannot be disturbed.  The importance of finality pervades all aspects of the judicial process, ranging from doctrines that dictate when an issue may no longer be revisited to rules setting the time in which a litigant must file an appeal.  For this reason, reconsideration of an order or judgment is an extraordinary remedy.  The Federal Rules of Civil Procedure offer two distinct avenues for this relief but impose strict conditions to ensure that it is granted sparingly.[226] Consistent with the need for finality, the standard for reconsideration heightens with the passage of time.  Generally, a party may question the correctness of a ruling through a motion to alter or

---

[222]    *Ciccozzi Response*, Dkt. No. 60 at 1-4.

[223]    Id. at 2.

[224]    Id. at 4-6.

[225]    Id. at 6.

[226]    See Geneva Coll. v. Sebelius, 929 F. Supp. 2d 402, 452 (W.D. Pa. 2013), on reconsideration in part (May 8, 2013) ("By reason of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly").

amend a judgment under Rule 59(e) within 14-days of the Bankruptcy Court's order.[227]  After that, one must seek relief from the judgment or order under Rule 60(b),[228]  establishing at least one of the six enumerated grounds for relief[229] and that the motion has been filed "within a reasonable time."[230]

In this case, the relief sought by the Debtors is procedurally and factually muddled. At its core, they unabashedly seek rulings inconsistent with those entered years ago in their prior bankruptcy, to say nothing of the rulings by the State Court.  Yet despite a single passing reference to Rule 60(b) in the *Motion*, the Debtors strive to bypass such impediments through a steadfast insistence that the Court's judicial estoppel ruling is dicta.  Aside from relying on a willful mischaracterization of *Butko I*, this strategy alone does not clear the hurdles presented by the later proceedings.  Resolute, the Debtors thus beg the Court to construe the *Motion* by all means necessary to gloss over any procedural deficiencies.

Ultimately, the guiding principle here is that the Court is not free to revisit any ruling at any time for any reason.  And it is not the Court's job to do the Debtors' homework: "when parties fail to fully flesh out arguments in their papers, 'there can be no reasonable expectation that a court will decrypt their briefs in the desired way.'"[231]  Procedural deficiencies breed substantive ones when the proper standard is not targeted, and the Court cannot reasonably be expected to craft theories for the Debtors out of whole cloth.  Still, the history of this case

---

[227]    Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023; <u>see</u> <u>United States v. Fiorelli</u>, 337 F.3d 282, 288 (3d Cir. 2003).

[228]    Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[229]    <u>See</u> Fed. R. Civ. P. 60(b)(1)-(6).

[230]    Fed. R. Civ. P. 60(c).

[231]    <u>Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.)</u>, 462 B.R. 6, 20 (Bankr. D. Mass. 2011) (quoting <u>Hermosilla v. Hermosilla (In re Hermosilla)</u>, 450 B.R. 276, 299 (Bankr. D. Mass. 2011)).

reveals that lingering doubts will not help bring this matter to a close.  Accordingly, the Court will approach the *Motion* as one primarily under Rule 59(e), but will (within reason) address matters beyond the scope of *Butko II* to discourage another pointless stab at reconsideration following this decision.

A.      **The Rule 59(e) Standard**

The United States Court of Appeals for the Third Circuit has explained that the purpose of reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence."[232]  To prevail under Rule 59(e), the movant must establish at least one of three grounds: (1) "an intervening change in the controlling law;" (2) new evidence that was not previously discoverable; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice."[233]  Clear error requires "more than mere disagreement with the earlier ruling; it must [be] show[n] that the Bankruptcy Court committed a 'direct, obvious, [or] observable error.'"[234]

There are also several prudential concerns governing reconsideration.  It is improper to simply "ask the Court to rethink what the Court had already thought through—rightly or wrongly."[235]  The court must have "*overlooked* dispositive factual matters or controlling decisions of law,"[236] which in turn requires that they were presented to the court in the first place.

---

[232]    Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985).

[233]    Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)).

[234]    In re Energy Future Holdings Corp., 904 F.3d 298, 312 (3d Cir. 2018) (quoting Black's Law Dictionary (10th ed. 2014))

[235]    Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983); see Geneva Coll. v. Sebelius, 929 F. Supp. 2d at 452; Knipe v. SmithKline Beecham, 583 F. Supp. 2d 553, 586 (E.D. Pa. 2008); Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

[236]    Pelham v. United States, 661 F.Supp. 1063, 1065 (D.N.J.1987) (emphasis added); see Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. at 1122 (reconsideration "addresses only factual and legal matters that the Court may have overlooked").

41

Thus, the movant may not rely on new facts or issues inexcusably omitted from the initial consideration of the matter.[237]  Nor may reconsideration serve as a means to revisit an issue with "the benefit of 'the hindsight provided by the court's analysis.'"[238]

Viewing the *Motion* and *Response* under this rule, the Debtors advance four arguments in support of reconsideration of *Butko II*: (1) the *Judgment* is void; (2) the *Judgment* is confessed, and therefore a nullity until conformed; (3) *Butko II*'s legal analysis that Act 6 applies to installment land contracts by analogy is legally incorrect; and (4) reconsideration is necessary to avoid manifest injustice.  The Court will address each in turn, considering subsidiary issues when necessary.

### B.    The *Judgment* is Not Void

The Debtors contend that the *Judgment* is void because this Court was deprived of subject matter jurisdiction by Mr. Ciccozzi's failure to provide them a proper Act 6 notice.  If true, it would then follow that the Court's reliance on the *Judgment* to grant stay relief was misplaced.  Thus, the Debtors effectively seek relief from the *Judgment* itself under Rule 60(b) to support relief from *Butko II* under Rule 59(e).

Rule 60(b)(4) authorizes a Court to relieve a party from a void judgment.[239]  The Third Circuit has stated that a judgment is void "if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered 'a decree which is not within the powers granted to it by the law.'"[240]  Although Rule 60(b) generally requires that motions must be brought within a

---

[237]    See Geneva Coll. v. Sebelius, 929 F. Supp. 2d at 452; Knipe v. SmithKline Beecham, 583 F. Supp. 2d at 586; Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990).

[238]    Geneva Coll. v. Sebelius, 929 F. Supp. 2d at 452 (quoting Knipe v. SmithKline Beecham, 583 F. Supp. 2d at 586).

[239]    Fed. R. Civ. P. 60(b)(4), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[240]    Marshall v. Bd. of Ed., Bergenfield, N.J., 575 F.2d 417, 422 (3d Cir. 1978) (quoting United States v. Walker, 109 U.S. 258, 265-67, 3 S.Ct. 277, 282, 27 L.Ed. 927 (1883)); see In re Semcrude, L.P., 728 F.3d 314, 323

"reasonable time,"[241] "nearly overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment because of its status as a nullity."[242]  As a result, the Debtors' two-year delay in seeking relief, though indisputably prejudicial to Mr. Ciccozzi, is immaterial to Rule 60(b)(4).

But the Debtors' attempt to cast the *Judgment* as void erroneously presupposes that they are entitled to an Act 6 notice and that the Court's subject matter jurisdiction depends on it.  Considering *Butko I*, the first premise can be established only by showing that either the judicial estoppel ruling is dicta or there are grounds to reconsider it under Rule 60(b).  As for the second, the Debtors need to demonstrate that the Court's unquestioned jurisdiction to enforce the *Settlement Agreement* did not extend to the entry of the *Judgment*.  Because the Debtors cannot satisfy any of these prerequisites, they have no right to relief under Rule 60(b)(4).

### 1.     The Debtors are Judicially Estopped from Asserting Act 6 Notice

### i.     The *Butko I* Judicial Estoppel Ruling is Not Dicta

"Dictum" has been defined by the Third Circuit as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding."[243]  Considering how many times *Butko I* has been reaffirmed through subsequent proceedings, the suggestion that the judicial estoppel ruling might be dicta is frustratingly myopic and dives headfirst into a bizarre procedural morass.  Indeed, the complexity of this argument is

---

(3d Cir. 2013); <u>Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros</u>, 441 F. App'x 822, 823 (3d Cir. 2011).

[241]    Fed. R. Civ. P. 60(c).

[242]    <u>United States v. One Toshiba Color Television</u>, 213 F.3d 147, 157 (3d Cir. 2000).

[243]    <u>United States v. Mallory</u>, 765 F.3d 373, 381 (3d Cir. 2014); <u>see</u> <u>Coleman v. Greene</u>, 845 F.3d 73, 76 (3d Cir. 2017).  It is worth noting that although dicta is not binding in a subsequent proceeding, <u>see</u>, <u>e.g.</u>, <u>Williams v. United States</u>, 289 U.S. 553, 568, 53 S. Ct. 751, 756, 77 L. Ed. 1372 (1933), the Third Circuit has cautioned that "[l]itigants should not totally disregard dicta . . . because it indicates the direction or framework of an opinion writer's thought, and thereby serves as a tool for predicting what the court might do when the issue is properly presented."  <u>Chowdhury v. Reading Hosp. & Med. Ctr.</u>, 677 F.2d 317, 324 (3d Cir. 1982).

exemplified by the fact that it was recently rejected by the State Court.  As such, the Court must

first consider the implications of collateral estoppel and the *Rooker-Feldman* doctrine to discern

whether it is still appropriate for this Court to weigh in on the issue.

A federal court must afford a state court judgment the same preclusive effect that it

would be given in courts of the rendering state.[244]  In Pennsylvania, collateral estoppel, also known

as issue preclusion, "prevents re-litigation of an issue in a later action, despite the fact that it is

based on a cause of action different from the one previously litigated."[245]  For collateral estoppel

to apply,

> [t]he identical issue must have been necessary to final judgment on the
> merits, and the party against whom the plea is asserted must have been a
> party, or in privity with a party, to the prior action and must have had a full
> and fair opportunity to litigate the issue in question.[246]

Here, it is undisputed that Judge Fouse's decision, which found this Court's judicial estoppel ruling

was not dicta but *res judicata*, easily satisfies all the elements of collateral estoppel.[247]

Rather than accept that result, the Debtors argue that Judge Fouse's decision is

wrong.[248]  Even if that were the case, their only remedy was to timely appeal that decision, not

seek contrary relief in the bankruptcy court.  Under the *Rooker-Feldman* doctrine, inferior federal

courts are barred from "from exercising jurisdiction over cases brought by 'state-court losers'

---

[244]   Pogonovich v. Bertolotti (In re Bertolotti), 470 B.R. 356, 359–60 (Bankr. W.D. Pa. 2012) (citing 28 U.S.C.
§ 1738).

[245]   Balent v. City of Wilkes–Barre, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995).

[246]   *Id.* (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)).

[247]   See *Decision and Order*, Dkt. No. 15-1 at 3 ("The Butkos argue that Judge Taddonio's ruling that they are
judicially estopped from presenting Act 6 defenses is "dicta" since the matter before him was resolved on
another issue.  We disagree.").

[248]   Specifically, the Debtors contend that Judge Fouse confused the concepts of "dicta" and "alternative
grounds."  See *Response*, Dkt. No. 56 at n. 27.

challenging 'state-court judgments rendered before the district court proceedings commenced.'"[249]

As a former bankruptcy judge once observed, it is not this Court's job to grade the state court's

papers.[250]

Astonishingly, the Debtors seize on the fact that the state court proceedings were a

collateral attack on *Butko I* to contend *Rooker-Feldman* does not apply.  The Third Circuit has held

that the *Rooker–Feldman* doctrine has four requirements:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of
> injuries caused by [the] state-court judgments"; (3) those judgments were
> rendered before the federal suit was filed; and (4) the plaintiff is inviting the
> district court to review and reject the state judgments.[251]

The Debtors fixate on the third, asserting that "[t]he March 19, 2020 State Court Decision was not

before the 2018 decision of this Court at [sic] *In re Butko [I]*" and that they are not "complaining

about the State Court decision."[252]   Frankly, this position is emblematic of their incoherent

approach to the procedural history of this case.  The Debtors are not challenging *Butko I*—they

claim the judicial estoppel ruling is non-binding dicta; they are asking this Court to override Judge

Fouse's allegedly erroneous interpretation of *Butko I* and deny his decision any preclusive effect.

But right or wrong, a subsequent federal court is bound by an intervening state court's rulings

based on a prior federal court decision.  In sum, this is the epitome of a *Rooker-Feldman* fact

pattern.

Finding itself at the crossroads of various preclusion doctrines, the Court ultimately

concludes that collateral estoppel prevents the Debtors from now disputing that *Butko I* judicially

---

[249]   Lance v. Dennis, 546 U.S. 459, 460, 126 S. Ct. 1198, 1199, 163 L. Ed. 2d 1059 (2006) (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

[250]   Hon. M. Bruce McCullough.

[251]   Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quoting Exxon Mobil, 544 U.S. at 284).

[252]   *Response*, Dkt. No. 56 at ¶ 35 (emphasis omitted).

estopped them from asserting an Act 6 notice defense.  While the Court need go no further, to eliminate any remaining doubts it will once again reaffirm what should have been obvious to them: **the judicial estoppel ruling is not dicta**.[253]  Admittedly, the analysis in *Butko I* is not a beacon of clarity, but there is simply no room for the interpretation advanced by the Debtors for a plethora of reasons.

In the first instance, the Debtors conveniently forget that *Butko I* was prompted by their motion explicitly seeking a determination that Mr. Ciccozzi was required to provide them an Act 6 notice.[254]  To that end, *Butko I* held that they were judicially estopped from asserting Act 6 protections,[255] and expressly denied them relief "with respect to any argument that state law modifies the *Settlement Agreement*."[256]  Similarly, the accompanying order denied the Debtors' motion "with respect to any argument that the notice and default provisions of the *Settlement Agreement* are unenforceable as written."[257]  These statements are unambiguous and speak directly to the relief requested by the Debtors.  To say they were unnecessary to the outcome ignores the procedural posture of *Butko I*.

Putting procedure aside, the Debtors' attempt to divorce the judicial estoppel ruling from Mr. Ciccozzi's waiver of the default is still fundamentally flawed.  Conceptually, if they were entitled to Act 6 notice and defenses, the time in which they could unilaterally cure their default would not yet have expired.[258]  Therefore, if the Debtors had the *right* to cure their default under

---

[253]    To the extent that the Court agrees with Judge Fouse's conclusion, there is no harm in the Court reiterating its own views on *Butko I*.

[254]    See n. 42, *supra*.

[255]    Butko I, 584 B.R. at 108.

[256]    Id. at 110.

[257]    *Order*, Case No. 16-23695-GLT, Dkt. No. 221 at ¶ 1.

[258]    See 41 Pa. Stat. Ann. §§ 403(a), 404(a).

section 404(a) of Act 6, there would have been nothing for Mr. Ciccozzi to waive because he had

no legal basis to refuse.  As a result, the Court's conclusion that Mr. Ciccozzi's retention of the

late payments "waived their untimeliness" only makes sense if the Debtors were judicially

estopped from claiming a longer cure period than provided in the *Settlement Agreement*.[259]

Even if the Debtors legitimately believed that the judicial estoppel ruling was

unnecessary dicta in *Butko I*, they cannot reasonably claim that it was not adopted by the Court in

later proceedings.  The Debtors raised these exact arguments in September 2018 after the Court

granted Mr. Ciccozzi stay relief.  In denying their motion for reconsideration, the Court held that

*Butko I* evidenced its intent and rationale for enforcing the *Settlement Agreement* strictly as written.

In other words, the Court implicitly, if not explicitly, rejected the assertion that the Debtors were

entitled to an Act 6 notice for the reasons stated in *Butko I*.  And the Court rejected it again when

it entered the *Judgment*.  Not surprisingly, they do not have any response to these facts.

Thus, under any permutation, the inescapable conclusion is that the *Butko I*'s

judicial estoppel ruling is not dicta and is binding on all subsequent proceedings.

### ii.      Reconsideration of *Butko I* is Unwarranted under Rule 60(b)

While the Debtors contend that the Court's application of judicial estoppel was

clearly erroneous, they do not actually seek reconsideration of *Butko I* because they stubbornly

insist that it is dicta.  In the interest of leaving no stone unturned, the Court observes that there is

no basis for relief under the circumstances.

More than two years have passed since the Court entered *Butko I*.  That means relief

under Rule 59(e), which must be sought within 14 days, is no longer available.  Similarly, the

failure to bring a motion within one year of the entry of *Butko I* forecloses relief under Rule 60(b)

---

[259]      <u>Butko I</u>, 584 B.R. at 109.

for reasons such as mistake, excusable neglect, newly discovered evidence, or fraud.[260]   Rule 60(b)(5), which applies to a judgment that has been satisfied, released, discharged, or is otherwise based on a vacated judgment, is also inapplicable.[261]   Nor can the Debtors plausibly argue that there was a jurisdictional or due process deficiency underlying *Butko I* that would render it void.[262] That leaves the "catch-all" provision under Rule 60(b)(6) as the only possibility.

Under Rule 60(b)(6), the Court may relieve a party from a judgment or order for "any other reason that justifies relief."[263]   Though seemingly broad, it is not a substitute for an appeal.[264]   Relief under this provision is appropriate only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."[265]   The Third Circuit has explained that the circumstances must be "sufficiently 'extraordinary' to outweigh the interest in the finality of judgments."[266]   Moreover, "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices."[267]

A motion under Rule 60(b)(6) also must be brought within a "reasonable time."[268] The reasonableness of the delay is assessed on a case-by-case basis.[269]   The determination is

---

[260]   See Fed. R. Civ. P. 60(b)(1)-(3), (c).

[261]   See Fed. R. Civ. P. 60(b)(5) ("the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable").

[262]   See Fed. R. Civ. P. 60(b)(4).

[263]   Fed. R. Civ. P. 60(b)(6).

[264]   Drumm v. N.E. Loan Mktg. Assoc. (In re Drumm), 329 B.R. 23, 31 (Bankr. W.D. Pa. 2005).

[265]   Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir.1993); see Norris v. Brooks, 794 F.3d 401, 404 (3d Cir. 2015); Budget Blinds, Inc. v. White, 536 F.3d 244, 255 (3d Cir. 2008).

[266]   Budget Blinds, Inc. v. White, 536 F.3d at 255.

[267]   Id.

[268]   Fed. R. Civ. P. 60(c).

[269]   See Delzona Corp. v. Sacks, 265 F.2d 157, 159 (3d Cir. 1959).

informed by many factors, including "finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties."[270]

In this case, the Debtors cannot sustain the heavy burden to establish cause for relief from *Butko I* under Rule 60(b)(6).  There is nothing extraordinary about the circumstances or unexpected about the resulting hardship.  To the contrary, the Debtors simply disagree with the Court.  But rather than timely appeal *Butko I*, they opted to save their powder, likely because the Court denied Mr. Ciccozzi relief at that time.  Even once the issue became pressing, the Debtors failed to appeal the denial of their motion to reconsider stay relief or entry of the *Judgment*. Instead, they launched a futile collateral attack on *Butko I* in the State Court, forcing Mr. Ciccozzi to endure two years of litigation to reach the same result.  Once those proceedings concluded, the Debtors returned to this Court only to try to rehash the same issues anew.  Thus, a request to revisit *Butko I* now under these circumstances would be untimely and without merit.

### 2.    The Court had Jurisdiction and Authority to Enter the *Judgment*

To begin, there is no dispute that the Court has subject matter jurisdiction over the *Settlement Agreement* and its enforcement.  Instead, the Debtors argue that Mr. Ciccozzi's failure to provide an Act 6 notice deprived the Court of the jurisdiction necessary to enter the *Judgment*. Although they are judicially estopped from asserting an Act 6 notice defense,[271] "[s]ubject-matter jurisdiction can never be waived or forfeited."[272]  As a result, even though the Debtors are not entitled to receive one, the Court must still consider whether an Act 6 notice is a jurisdictional prerequisite to the entry of a judgment for possession.

---

[270]    In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 383 F. App'x 242, 246 (3d Cir. 2010); see Chaney v. Grigg (In re Grigg), 568 B.R. 498, 510 (Bankr. W.D. Pa. 2017), as corrected (July 7, 2017).

[271]    See In re Butko I, 584 B.R. at 108-10; Section IV.B.1.i, *supra*.

[272]    Gonzalez v. Thaler, 565 U.S. 134, 141, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012).

49

The Court's analysis begins with the statute.  Section 403(a) of Act 6 provides:

> Before any residential mortgage lender may . . . commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.[273]

On its face, this provision merely dictates what a lender must do before taking legal action to enforce a mortgage interest.  That said, the Debtors correctly point to decisions from the Pennsylvania Superior Court and federal courts holding that section 403(a) of Act 6 is jurisdictional.[274]  More recent decisions, however, cast doubt on that conclusion.

In *Beneficial Consumer Disc. Co. v. Vukman*,[275] the Supreme Court of Pennsylvania held that an analogous notice under "Act 91"[276] is a procedural requirement that does not implicate the court's subject matter jurisdiction.[277]  It acknowledged the authority now cited by the Debtors, which the lower court relied on, but started from the premise that "[i]n the absence of a clear legislative mandate, laws are not to be construed to decrease the jurisdiction of the courts."[278]  The court emphasized the distinction between jurisdiction, which "'relate[s] solely to the competency of the particular court . . . to determine controversies of the general class to which

---

[273]    41 Pa. Stat. Ann. § 403(a).

[274]    See Bankers Tr. Co. v. Foust, 424 Pa. Super. 89, 92 n. 1, 621 A.2d 1054, 1056 (1993); Philadelphia Hous. Auth. v. Barbour, 405 Pa. Super. 140, 143, 592 A.2d 47, 48 (1991), aff'd, 532 Pa. 212, 615 A.2d 339 (1992); see also Main Line Fed. Sav. & Loan Ass'n v. Joyce, 632 F. Supp. 9, 10 (E.D. Pa. 1986); Soto v. PNC Bank (In re Soto), 221 B.R. 343, 352 (Bankr. E.D. Pa. 1998).

[275]    Beneficial Consumer Disc. Co. v. Vukman, 621 Pa. 192, 200, 77 A.3d 547, 551 (2013)

[276]    See 35 Pa. Stat. Ann. § 1680.402c(a) ("Before any mortgagee may accelerate the maturity of any mortgage obligation covered under this article, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the mortgage debtor for such mortgage obligation, such mortgagee shall give the mortgagor notice as described in section 403-C.").

[277]    Beneficial Consumer Disc. Co. v. Vukman, 621 Pa. at 202-03.

[278]    Id. at 201 (citing Armstrong School Dist. v. Armstrong Educ. Assoc., 528 Pa. 170, 595 A.2d 1139, 1144 (1991)).

the case . . . belongs,'" and the authority to "'order or effect a certain result.'"[279]  Reasoning that a

"cause of action does not include the procedural requirements of acting on that cause," it concluded

"the Act 91 notice requirements certainly do not sound in jurisdiction as they do not affect the

classification of the case as a mortgage foreclosure action."[280]

      Since *Vukman*, the case law has shifted away from a jurisdictional view of notice

requirements in mortgage foreclosure actions.[281]  Admittedly, *Vukman* is the sole Pennsylvania

Supreme Court decision on the matter and only explicitly references Act 91, not Act 6.  That said,

given their statutory similarities and *Vukman*'s broad analysis, the Court predicts the Pennsylvania

Supreme Court would hold that section 403(a) of Act 6 is not a jurisdictional provision.

Accordingly, the Court finds the lack of an Act 6 notice here did not divest it of subject matter

jurisdiction to enter the *Judgment*.

      Of course, a judgment entered without sufficient legal authority is just as void as

one entered without the requisite jurisdiction.[282]  The important difference is that while parties

cannot create subject matter jurisdiction where there is none, judicial authority may be bestowed

on a tribunal by consent of the parties.[283]  Here, the parties' consent to the Court's entry of a

judgment for possession is evidenced by the express terms of the *Settlement Agreement*.  And for

---

[279]  Id. at 200 (quoting In re Melograne, 571 Pa. 490, 812 A.2d 1164, 1167 (2002)).

[280]  Id. at 202.

[281]  See RBS Citizens, N.A. v. Brodie, No. 3316 EDA 2014, 2015 WL 6554426, at *7 (Pa. Super. Ct. Sept. 14, 2015) (failure to provide notice under Act 6 or Act 91 "in no way affects our jurisdiction to hear this matter"); Wells Fargo Bank, N.A. v. Gilroy, No. 1216 WDA 2014, 2015 WL 4680780, at *4 (Pa. Super. Ct. July 22, 2015) (pre-foreclosure Veteran's notices non-jurisdictional); Bank of Am., Nat. Ass'n v. Deans, No. 748 EDA 2013, 2014 WL 10987437, at *4 (Pa. Super. Ct. Jan. 21, 2014) ("our Courts have consistently held that the notice requirements in mortgage foreclosure actions are procedural . . . and also have no effect upon the jurisdiction of the courts of this Commonwealth"); see also In re Ruiz, 501 B.R. 76, 79 (Bankr. E.D. Pa. 2013) (defective notice under Act 6 does not divest a court of subject matter jurisdiction).

[282]  See United States v. Walker, 109 U.S. at 265-67.

[283]  See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 135 S. Ct. 1932, 1942, 191 L. Ed. 2d 911 (2015).

the reasons stated in *Butko I*, the Debtors are judicially estopped from asserting that their consent

was conditional on Mr. Ciccozzi's compliance with Act 6 notice requirements.  Thus, the Court

had the power to enter the *Judgment*.

        In sum, the *Judgment* is not void because the Court had both the subject matter

jurisdiction and the legal authority to enter it.

**C.**      **The *Judgment* is Not a Confessed Judgment**

        The Debtors assert that reconsideration of *Butko II* is necessary because the

*Judgment*, which the Court relied on, is an unconformed judgment by confession and therefore a

nullity.  To be sure, the case law supports their contention that a confessed judgment is not "a final

judgment in the usual sense" until conformed under section 407(a) of Act 6 through a separate

proceeding "in which the parties are free to litigate the matter anew, raising all possible claims and

defenses."[284]  Thus, this argument turns on whether the *Judgment* is, in fact, confessed.  Although

it is a subtle point, the idea that the *Judgment*'s qualitative nature requires conformity under Act 6

is not necessarily the assertion of an Act 6 defense inconsistent with the *Settlement Agreement* and

barred by *Butko I*.

---

[284]    <u>In re Olick</u>, 221 B.R. at 151; <u>see</u> 41 Pa. Stat. Ann. § 407(a) ("As to any residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. The parties to the action shall have the same rights as parties to other original proceedings. Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment by confession if the residential mortgage lender so desires.").

As recognized by the Third Circuit, "'[j]udgment by confession is a product of state law, having no analog in the federal rules.'"[285]   The practice "is firmly entrenched in Pennsylvania"[286] and is governed by the Commonwealth's Rules of Civil Procedure.[287]   Put simply, a confession of judgment, or cognovit, is a contractual waiver of prejudgment procedures that enables a creditor to obtain a judgment without a trial of defenses.[288]   "[T]he creditor or its attorney simply . . . apply to the court for judgment against the debtor in default without requiring or permitting the debtor or guarantors to respond at that juncture."[289]   Generally, a nonjudicial officer, such as a County Prothonotary or clerk, then "enter[s] judgment in conformity with the confession"[290] that enjoys "all the qualities of a judgment on a verdict."[291]   A federal court may also enter a judgment by confession provided it has subject matter jurisdiction.[292]   Once entered, the judgment may be challenged,[293] but "remains in effect as a judicial lien" in the interim.[294]

---

[285]    F.D.I.C. v. Deglau, 207 F.3d 153, 159 (3d Cir. 2000) (quoting Antipas v. 2102, Inc., No. CIV.A. 98–1145, 1998 WL 306537, at *1 (E.D.Pa. June 9, 1998)).

[286]    Swarb v. Lennox, 405 U.S. 191, 193, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).

[287]    See Pa. R .C. P. 2950-2961, 2970-2976.

[288]    See, e.g., Antipas v. 2102, Inc., 1998 WL 306537, at *1.

[289]    Silverman v. Eastrich Multiple Inv'r Fund, L.P., 51 F.3d 28, 32 (3d Cir. 1995).

[290]    Pa. R .C. P. No. 2956.  The entry of judgment by the Prothonotary is a ministerial act.  Lenson v. Klovsky, 430 Pa. 193, 197, 241 A.2d 66, 68 (1968).

[291]    Kostenbader v. Kuebler, 199 Pa. 246, 249, 48 A. 972, 972 (1901); see Neducsin v. Caplan, 2015 Pa. Super. 158, 121 A.3d 498, 505 (2015); O'Hara v. Manley, 140 Pa. Super. 39, 44, 12 A.2d 820, 822 (1940).

[292]    See United States v. Stuart, 392 F.2d 60, 63 (3d Cir. 1968); Xerox Corp. v. W. Coast Litho, Inc., 251 F. Supp. 3d 534, 538 (W.D.N.Y. 2017); Walnut Equip. Leasing Co. v. Couture, No. CIV. A. 89-3490, 1989 WL 95556, at *1 (E.D. Pa. Aug. 14, 1989); Nat'l Leasing Corp. v. Williams, 80 F.R.D. 416, 418 (W.D. Pa. 1978).

[293]    See Pa. R .C. P. No. 2959.  A debtor may either move to reopen the judgment to present evidence of "a meritorious defense sufficient to create a triable issue of fact," Antipas v. 2102, Inc., 1998 WL 306537, at *2, or move to strike the judgment "for a fatal defect or irregularity appearing on the face of the record." Resolution Tr. Corp. v. Copley Qu-Wayne Assocs., 546 Pa. 98, 106, 683 A.2d 269, 273 (1996).

[294]    Antipas v. 2102, Inc., 1998 WL 306537, at *2; see Pa. R .C. P. No. 2959(f).

The Debtors insist that the *Judgment* is confessed because "it has all of the qualities of a confessed judgement."[295]  They emphasize that:

> [i]t is a judgement *solely authorized* by an instrument, usually on the filing of a [sic] affidavit of default and, *by its terms, requires no answer or hearing before its entry*, as opposed to being a judgement based on the result of a separate legal action.[296]

Although the Debtors acknowledge they were given a chance to be heard prior to the entry of the *Judgment*, they stress that the *Settlement Agreement* itself did not require any response or hearing upon Mr. Ciccozzi's filing of a notice of default.[297]  When pressed further on this point, they conceded that there was "nothing particularly offensive about the process" except that they did not receive an Act 6 notice.[298]

Once again, the Court reiterates that the Debtors are judicially estopped from "asserting additional protections under [Act 6]" beyond those provided in the *Settlement Agreement*.[299]  Thus, if the Debtors are estopped from asserting an Act 6 notice defense, it necessarily follows that the failure to receive that notice cannot render the *Judgment* infirm under a different provision of Act 6.  The Court will not countenance an end run around the *Judgment* premised on the lack of a notice the Debtors are estopped from demanding.  *Butko I* cannot be read so inconsistently.

Without the Act 6 notice component, the Debtors' argument devolves into a bizarre assertion of form over substance.  They do not deny that they received a full and fair consideration of all their defenses (albeit through protracted litigation), but strangely contend that the actual

---

[295]    *Response*, Dkt. No. 56 at ¶ 19.

[296]    Id. (emphasis in original, footnote omitted).

[297]    *Response*, Dkt. No. 56 at n. 15.

[298]    *Audio Recording of Hearing Held in Courtroom A*, August 26, 2020 at 1:48:03 p.m.

[299]    Butko I, 584 B.R. at 108.

process is irrelevant.  Rather, only the procedure set out in the *Settlement Agreement* (which did not entitle the Debtors to assert defenses prior to the entry of the *Judgment*), controls whether the resulting judgment is confessed.  But the fundamental indicia of a judgment by confession are entry without **notice or an opportunity** to be heard, not entry without the **right** to be heard.  Even where there is a contractual waiver of prejudgment procedures and defenses, it must matter whether that waiver was enforced or the case proceeded as if it did not exist.  That distinction speaks directly to the concept of "confession."  Otherwise, the nonsensical implication would be that the terms of the *Settlement Agreement* mean that no process—not even a separate civil action—could have yielded anything but a confessed judgment.

Ultimately, the Debtors cannot ignore the fact their defenses were fully litigated and judicially resolved merely because the Court ruled against them.  Thus, the Judgment is not confessed and reconsideration is not warranted for lack of conformity under section 407(a) of Act 6.

### D. The Debtors Lack an Equitable Interest in the Property Post-*Judgment*

The Debtors argue that even if the *Judgment* is valid and final, it still lacks the legal significance the Court ascribed to it.  They assert *Butko II* wrongly held that a judgment for possession terminates cure rights under an installment land contract subject to Act 6.[300]  Their point of contention with the analysis is the Court's failure to apply section 404(a) of Act 6 *literally*, rather than *by analogy*, to find that a default may be cured "at any time at least one hour prior to the commencement of bidding at a sheriff sale."[301]  After due consideration, however, the Court is unconvinced that *Butko II* is clearly erroneous.

---

[300]    The Court finds that questioning the legal impact of the *Judgment* vis-à-vis their equitable interest in the property is not necessarily the assertion of an Act 6 defense.

[301]    41 Pa. Stat. Ann. § 404(a).

The awkward tension underlying this dispute is that a land installment contract is not a residential mortgage, but it is to be treated as one for purposes of Act 6.[302] "Under the typical installment land contract, . . . the vendee takes possession and makes periodic installment payments until the balance of the contract price is paid."[303] Upon execution, the vendee becomes the equitable or beneficial owner of the property through the doctrine of equitable conversion,[304] but legal title to the property remains in the vendor "until the terms of the contract are satisfied."[305]

In *Anderson Contracting Co. v. Daugherty*, the Superior Court employed a "legal fiction . . . to extend the remedies available to a defaulting residential mortgagor [under Act 6] to defaulting vendees under installment sales agreements."[306] The protections hinged on whether an installment land contract satisfied the requirement that a residential mortgage be "secured by a lien."[307] Finding "that the framers of Act No. 6 did not intend the 'fit' be so tight that the lien requirement be met with absolute precision,"[308] the court reasoned:

> Retention of title by the vendor serves as security for the vendee's performance of the contract. In essence, then, a vendor who retains title has an interest which, although strictly speaking is not a lien, may be enforced as though it were. "There can be no sensible distinction between the case of a legal title conveyed to secure the payment of a debt and a legal title retained to secure such payment." In other words, as the Supreme Court of Indiana so aptly stated: "Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically,

---

[302]    Anderson Contracting Co. v. Daugherty, 417 A.2d at 1232 ("In short, we hold that for the purposes of Act No. 6 a vendor under a land installment contract will be deemed to be 'secured by a lien upon real property . . .'").

[303]    Id. at 1231.

[304]    Stillwater Lakes Civic Ass'n, Inc. v. Krawitz, 772 A.2d 118, 120 (Pa. Commw. Ct. 2001); Byrne v. Kanig, 231 Pa. Super. 531, 332 A.2d 472 (1974).

[305]    Anderson Contracting Co. v. Daugherty, 417 A.2d at 1231.

[306]    New Home Fed. Sav. & Loan Ass'n v. Trunk, 333 Pa. Super. 393, 403, 482 A.2d 625, 630 (1984), disapproved of by Marra v. Stocker, 532 Pa. 187, 192, 615 A.2d 326, 328-29 (1992) (disagreeing that "technical compliance" with Act 6 was not required where there is a violation of the due-on-sale clause of the mortgage).

[307]    41 Pa. Stat. Ann. § 101

[308]    Anderson Contracting Co. v. Daugherty, 417 A.2d at 1231.

> vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance." We find this analysis persuasive and reflective of the current trend in this country. Accordingly, we adopt it and conclude that a real estate security transaction, such as the instant land installment contract, should not be denied treatment as a "residential mortgage" solely because the vendor retains legal title as security for payment of the contract price. In short, we hold that for the purposes of Act No. 6 a vendor under a land installment contract will be deemed to be "secured by a lien upon real property . . . ."[309]

As cogently explained in a subsequent decision, *Anderson Contracting Co.* "equate[d] the relationship of vendor-vendee with that of mortgagee-mortgagor," "the installment sale contract with a residential mortgage," and "the interest retained by the vendor (legal title) with a 'lien or encumbrance.'"[310] Still, the Superior Court acknowledged the general proposition that one cannot have a lien upon one's own property.[311]

While *Anderson Contracting Co.* unequivocally held that "the rights and remedies provided by Act No. 6, in particular, the cure provisions of Section 404, should not be denied to" vendees under an installment land contract,[312] it did not explicitly address how far a court must extend the legal fiction that a vendor holds a lien rather than legal title. Under section 404(a) of Act 6, a debtor may cure a default up to an hour before a *sheriff's sale*.[313] In contrast, installment land contracts generally are not enforced through foreclosure sales because legal title has not changed hands.[314] Instead, a vendee's equitable rights are extinguished through judicial proceedings resulting in a judgment for possession.[315] But given its pronouncement, did *Anderson*

---

[309]  Id. at 1231–32 (citations and footnote omitted).

[310]  New Home Fed. Sav. & Loan Ass'n v. Trunk, 482 A.2d at 630.

[311]  Anderson Contracting Co. v. Daugherty, 417 A.2d at 1230.

[312]  Id. at 1232.

[313]  41 Pa. Stat. Ann. § 404(a).

[314]  See In re Callahan, 2004 WL 350753, at *3; In re Robinson, No. 03-18339, 2003 WL 22996982, at *3 (Bankr. E.D. Pa. Dec. 12, 2003); In re Belmonte, 240 B.R. at 852; In re Rowe, 110 B.R. at 722.

[315]  Id.

*Contracting Co.* implicitly set a requirement that installment land contracts subject to Act 6 be foreclosed through sheriff's sales?

In fairness, there is no binding authority directly answering that question. At best, there is only opposing dicta from two bankruptcy court decisions. Accordingly, the Court must predict how the Pennsylvania Supreme Court would decide the matter.[316]

The first case, *In Rowe*, involved an installment land contract subject to both the Pennsylvania Installment Land Contract Law[317] ("ILCL") and Act 6.[318] The creditor had provided the debtor a written notice of termination under section 904(a) of the ILCL stating that she had 32 days to cure her default.[319] The court found the notice deficient under Act 6 because it "fail[ed] to accurately set forth the time in which the default must be cured."[320] The court reasoned:

> By force of § 404(a), they had until the installment land sale contract analogue of one hour before a sheriff's sale to effect a cure. Since the vendor in an ILCL transaction remains in title, and no sheriff's sale is necessary, the right to cure an installment land sale contract presumably extends until one hour before the vendee's interests are cut off. This would not occur, in our view, until there is a court judgment terminating the vendee's rights in the property subject to the ILCL contract.[321]

Admittedly, this passage is non-binding dicta because the stated 32-day cure period was incorrect regardless of whether Act 6 applies literally or by analogy.[322]

---

[316]   Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996) ("In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us.").

[317]   See 68 P.S. § 901, *et seq.*

[318]   In re Rowe, 110 B.R. at 720.

[319]   Id at 722.

[320]   Id.

[321]   Id.

[322]   Two subsequent courts extended *In re Rowe*'s "by analogy" analysis of section 404(a) of Act to the similarly phrased section 1322(c) of the Bankruptcy Code, but neither involved installment land contracts subject to Act 6. See In re Callahan, 2004 WL 350753, at *3; In re Belmonte, 240 B.R. at 852.

The second case is *In re Grove*, authored by Judge Fitzgerald, who coincidentally served as the mediator in this case.[323]  There, the debtors similarly sought to utilize chapter 13 to cure their default under an installment land contract despite the prepetition entry of a judgment for possession.[324]  The court found that the debtors' interest in the property was not terminated by the judgment for possession:

> Debtors have remained in possession of the property. This fact is relevant to whether Debtors retain any interest in the property. In *In re Atlantic Business and Community Corporation*, . . . the Court of Appeals for the Third Circuit held that the possessory interest of a tenant-at-sufferance was "sufficient to invoke the protections of the automatic stay" and that mere possession created a property interest. In the case at bar, Debtors' possessory interest is entitled to the same protection. *Notwithstanding the judgment for possession entered in favor of Bankers Trust, Debtors' possessory interest was not terminated prepetition because the property was not sold at foreclosure*. Debtors remained in possession as of the bankruptcy filing date and Bankers Trust was precluded from obtaining possession, first by virtue of the state court order of stay pending appeal and second by the automatic stay.[325]

While the emphasized text seemingly adopts a literal application of section 404(a) of Act 6, this too is dicta because the judgment for possession in that case was stayed pending appeal and not a final order.[326]

In *Butko II*, the Court adopted the "by analogy" analysis of *In re Rowe* over *In re Grove*'s literal interpretation.[327]  In weighing these decisions, the Court found significant an observation made in *In re Robinson*:

> While it appears that *Grove* is concluding that in Pennsylvania the only way to cut off a vendee's rights in an installment sale contract is through the vehicle of a foreclosure sale, it does not reconcile the common view that

---

[323]    In re Grove, 208 B.R. at 846.

[324]    Id.

[325]    Id. at 847 (emphasis added, citations and footnote omitted).

[326]    Id.

[327]    Butko II, 617 B.R. at 535.

> installment sales contracts may be enforced by a judgment for possession
> and a subsequent ejectment so that no foreclosure sale will ever occur.[328]

Naturally, the lack of any discussion of the issue undermines *In re Grove*'s persuasive value in this context.  It is also difficult to accept that *Anderson Contracting Co.* and Act 6 upended the traditional means of enforcing defaults in installment land contracts without a single state court making an explicit statement to that effect in over four decades.

Ultimately, the core of *Anderson Contracting Co.* is that installment land contracts are a form of seller financing and vendees, as a class of home purchasers, should not be denied the protections of Act 6.[329]  The extension of analogous protections fully honors that mandate while acknowledging the reality that installment land contracts are not mortgages.  From the vendee's perspective, so long as the substantive protections—such as the opportunity to cure a default—are equivalent to what is afforded a typical mortgage under Act 6, technical differences should be irrelevant.  Indeed, *Anderson Contracting Co.* tells us that "[s]ubstance must prevail over form."[330]

Terminating a vendee's equitable interest through judicial proceedings, rather than a sheriff's sale, offers no less protection and has the benefit of being logically coherent.[331]  The Debtors do not refute that point, yet they do not concede that judicial proceedings are a meaningful safeguard.  This likely stems from their refusal to admit that they themselves received a full and fair adjudication of their rights from this Court before the entry of the *Judgment*.  In the end, the

---

[328]   In re Robinson, 2003 WL 22996982, at *3 (footnote omitted).

[329]   See Anderson Contracting Co. v. Daugherty, 417 A.2d at 1232.

[330]   Id.

[331]   The chain of title would certainly not be served by the legal fiction of a foreclosure by the record title holder. The Court is also struck by the strange possibility that a sheriff's sale could compel the vendor to sell the property to a third-party for the same price.  This point emphasizes that a vendor's interest in property, as both the seller and financier, is not really the same as the purely financial interest of a conventional mortgage lender.

only reason the Debtors prefer a sheriff's sale to a judgment for possession is that the *Judgment* has already entered.

For all these reasons, the Court predicts that the Pennsylvania Supreme Court would apply section 404(a) of Act 6 to installment land contracts by analogy as described in *In re Rowe*, rather than requiring a sheriff's sale.  The Debtors' position is certainly defensible, but falls far short of establishing that *Butko II* is clearly wrong.  Accordingly, the Court stands by its prior conclusion that the Debtors' equitable interest in the property did not survive entry of the *Judgment*.[332]

###   E.    **Stay Relief is Not Manifestly Unjust**

The Debtors' final argument is that granting Mr. Ciccozzi stay relief was manifestly unjust and must be reconsidered.  As a practical matter, their goal is not simply to re-impose the automatic stay, but to follow through on their plan to cure the default and secure the equity for themselves.  Apparently, they view this result as attainable because the alleged "manifest injustice" stems from Court's repeated denial of Act 6 protections.  Though billed as an alternative theory, the claim largely rests on the legal and factual errors alleged in the *Motion* and *Response*.  Without them, it is unclear how the rationale stands conceptually, or whether it then becomes a plea in equity.

Unfortunately, the "manifest injustice" standard under Rule 59(e) has not been defined with any precision.[333]  Presumably, the Third Circuit views the "need . . . to prevent

---

[332]    For this reason, the Court need not determine whether the procedure imposed by the Court upon an alleged default effectively overrode the *Settlement Agreement*'s provision that "all rights that [the Debtors] may have in the Property shall finally and permanently terminate" upon the expiration cure period.  See *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 15.  Because the Debtors are judicially estopped from varying the cure period as described in the *Settlement Agreement*, it does not matter whether their interest terminated prior to the *Judgment*.

[333]    See, e.g., Shearer v. Titus (In re Titus), 479 B.R. 362, 367 (Bankr. W.D. Pa. 2012).

manifest injustice" as distinct from the "need to correct a clear error of law or fact."[334]  Beyond that, the most oft cited guideposts are that the error must be "direct, obvious, and observable,"[335] and "apparent to the point of being indisputable."[336]  Put differently, "the record presented must be 'so patently unfair and tainted that the error is manifestly clear to all who view [it.]'"[337]  Even without the edges fully circumscribed, "clearly a moving party has a very high hurdle to leap over."[338]

While the impact of *Butko I* and *Butko II* on the Debtors is not lost on the Court, the record is devoid of any injustice, let alone injustice so manifest that it is obvious and indisputable to any observer.  In the end, their assertion boils down to one thing: the merit of the Court's judicial estoppel ruling.  The Court has already explained why a challenge to *Butko I* is untimely under Rule 60(b),[339] but did not reach the merits of the ruling.  The Debtors' protests of unfairness now demand further exposition.

The safeguards afforded by state consumer protection statutes are not something the Court takes lightly.  In *Butko I*, however, the Court found that the denial of Act 6 protections was essential to "[t]he integrity of the judicial process"[340] because "no lesser remedy than estoppel

---

[334]   Max's Seafood Cafe v. Quinteros, 176 F.3d at 677 ("the need to correct a clear error of law or fact *or* to prevent manifest injustice." (emphasis added)).

[335]   See Conway v. A.I. duPont Hosp. for Children, No. CIV. A. 04-4862, 2009 WL 1492178, at *6 n. 8 (E.D. Pa. May 26, 2009) (quoting Black's Law Dictionary 974 (7th ed.1999)) (internal quotation marks omitted).

[336]   See Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011) (quoting Shirlington Limousine Transp. Inc. v. U.S., 78 Fed. Cl. 27, 31 (2007)) (internal quotation marks omitted).

[337]   Von Kahle v. Roemmele (In re Roemmele), 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) (quoting Conway v. A.I. duPont Hosp. for Children, 2009 WL 1492178, at *6 n. 8).

[338]   In re Titus, 479 B.R. at 367.

[339]   See Section IV.B.1.ii, *supra*.

[340]   Butko I, 584 B.R. at 108.

would deny the Debtors the benefit of [their] chicanery."[341]  While they dispute the manipulative intent the Court perceived, the history of these proceedings tellingly reveals a pattern of bad faith that continues to this day.  Indeed, the Debtors' repeated efforts to ignore inconvenient facts and recast them in a more favorable light is emblematic of the issue the Court faced in *Butko I*: the Debtors want to unilaterally re-write the *Settlement Agreement* in a way that deprives Mr. Ciccozzi of the benefit of his bargain.

From the outset, it is important to view the *Settlement Agreement* in the proper context.  First and foremost, it is a negotiated resolution of the parties' dispute over rights to the Property under the *Lease*.  When the parties went to mediation, Mr. Ciccozzi no longer wanted to sell the Property and disputed the Debtors' right to exercise the purchase option.  On the other hand, though the Debtors wanted to assume the *Lease*, their position was undercut by a lack of financial means to complete the purchase before the option expired.  The resulting terms of their agreement reflect the parties' give and take in light of those realities and the threat of prolonged litigation that neither could afford:

| **The Debtors Received:** | | **Mr. Ciccozzi Received:** |
|---|---|---|
| One last chance to complete the purchase of the Property. | **in exchange for** | Default provisions that would promptly and finally terminate the Debtors' rights to the Property if they were to default again. |
| An additional 3 years beyond the expiration of the *Lease*'s deadline to exercise the option to purchase. | | An increase in the purchase price of around $30,000. |

Thus, while the *Settlement Agreement* is indisputably an installment land contract, it does not represent a run of the mill sale transaction and it does not help to think of it as such.

---

[341]    Id. at 106.

Structurally, the Debtors' concessions protected Mr. Ciccozzi's interest, regardless of the outcome.  The so-called "premium" price increase likely enticed Mr. Ciccozzi to agree to sell the Property, but also provided him adequate protection for the additional three years the Debtors had to complete the purchase.[342]  But the benefit of the premium largely depended on it being paid in full and on time.  If the Debtors failed to do so, the default provisions were designed to quickly terminate the transaction, end the relationship, and return the Property to Mr. Ciccozzi.  It is obvious that Mr. Ciccozzi viewed the default provisions as critical consideration because the Debtors would have never agreed to such a risky arrangement if he was willing to accept anything less.

Fully aware of the heavy repercussions of a default, the Debtors still asked this Court to approve the *Settlement Agreement* as being in their best interest.  As explained in *Butko I*, this was no empty gesture and required the Court to assess the relative wisdom and fairness of the compromise under the circumstances.[343]  And to ensure fairness to the Debtors, the Court modified the notice provisions and declined to enter the *Judgment* in advance, effectively granting them an opportunity to challenge an alleged default before the Court took action.  In the end, the Court accepted the Debtors' unequivocal representation that they wanted to be bound by the *Settlement Agreement* as presented to protect their interest in the Property despite the attendant risks.

Then the Debtors defaulted and no longer wanted to be bound by the *Settlement Agreement* as written.  So they argued they were not, pointing to the happy accident that entitled

---

[342]   Notably, the Debtors' monthly payment obligation under the *Settlement Agreement* was identical to that under the *Lease*.

[343]   Id. at 108 (citing In re Martin, 91 F.3d at 393 and In re Med. Asset Mgmt., Inc., 249 B.R. at 663); see also Fed. R. Bankr. P. 9019(a).

them to a much longer cure period: the *Settlement Agreement* happens to fit the definition of an

installment land contract, meaning that the unwaiveable protections of Act 6 rendered the onerous

default provisions unenforceable.  ***But only those provisions***.  Indeed, the Debtors asserted that

the parties remained bound by the *Settlement Agreement*, albeit as modified by Act 6, and moved

to enforce unwritten terms contrary to what they had represented to the Court while seeking its

approval.

Lest there be any confusion, the modified terms for which the Debtors advocate are

radically different from those encompassed in the *Settlement Agreement*.  To emphasize this point,

the following table presents a side by side comparison of the salient terms:

| | The *Settlement Agreement* AS WRITTEN[344] | The *Settlement Agreement* AS MODIFIED BY ACT 6[345] |
|---|---|---|
| Cure Period | The Debtors shall have a period of **10 days** expiring on the 16th day of the applicable calendar month to cure any payment default due on or before the 5th of the month.[346] | *Indeterminate*: "[N]ot more than three times in any calendar year," the Debtors may cure a default "at any time at least one hour prior to the commencement of bidding at a sheriff sale."[347] |
| Notice of Default and Right to Cure | None.[348] | At least 30 days before taking any legal action, Mr. Ciccozzi must provide the Debtors with a statutory form of notice of their default and right to cure under section 404(a) of Act 6.[349] |
| Termination of Equitable Interest | If a default remains uncured upon the expiration of the of the cure period, "all rights that [the Debtors] may have in the Property shall finally and permanently terminate."[350] | Upon the completion of a sheriff's sale.[351] |

---

[344]    This column also contains the Court ordered modifications.

[345]    As interpreted by the Debtors.

[346]    *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶¶ 12, 14.

[347]    41 Pa. Stat. Ann. § 404(a).

[348]    *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 13.

[349]    41 Pa. Stat. Ann. § 403(a).

[350]    *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 15.

[351]    41 Pa. Stat. Ann. § 404(a).

| Notice to the Court | Within two days of the expiration of the cure period, Mr. Ciccozzi shall file a Notice of Default with the Court.[352] | Presumably, at least 30 days after providing the notice required by section 403(a) of Act 6, Mr. Ciccozzi may file a Notice of Default with the Court.[353] |
|---|---|---|
| Enforcement Proceedings | **After a full and fair adjudication of the applicability of Act 6, all enforcement remedies were stayed pending further Court order.** | |
| | *Actual Procedure Followed:* | *Procedure Demanded:* |
| | In the absence of an objection, stay relief entered seven days after the filing of the Notice of Default. | Assuming a default remains uncured 30 days after the Debtors are provided with notice required by section 403(a) of Act 6, the Court may enter both stay relief and a judgment for possession in favor of Mr. Ciccozzi upon the filing of a Notice of Default. |
| | Upon the Debtors' allegation that the payment default had been waived, the Court scheduled a hearing and afforded Mr. Ciccozzi 14 days to object. Before the hearing, the Debtors filed a brief in support of the application of Act 6. After oral argument on both the factual circumstances of the default and the application of Act 6, the Court denied reconsideration. | Next, Mr. Ciccozzi must commence a separate civil action in the State Court against the Debtors to conform the Judgment under section 407(a) of Act 6 where they are free to litigate all defenses anew. |
| | A judgment for possession (the *Judgment*) entered upon an oral request by Mr. Ciccozzi after the Court ordered him to file a supplemental brief explaining the jurisdictional basis for such relief and the Debtors' were afforded seven days to file a responsive brief of their own. | If Mr. Ciccozzi obtains a conforming judgment, the Property must then be sold at a sheriff's sale to terminate the Debtors' equitable interest.<br><br>The Debtors may cure their default at any time up to one hour before bidding. |
| | Upon entry of the *Judgment*, Mr. Ciccozzi may seek removal of the Debtors from the Property through the State Court if they do not leave willingly as agreed. | |

[352]    *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 14, as modified by, *Order*, Case No. 16-23695-GLT, Dkt. No. 146.

[353]    Here the intersection of the *Settlement Agreement* and Act 6 creates a Catch-22: Stay relief is dependent on the filing of a Notice of Default after the expiration of the cure period, which will never occur because cure rights under Act 6 do not expire until one hour prior to a sheriff's sale (or its analogue). A sheriff's sale, in turn, cannot be scheduled without stay relief. Given the Debtors' earlier misinterpretation of section 403(a) of Act 6, see n. 40, *supra*, the Court presumes they would state that Mr. Ciccozzi is permitted to file a Notice of Default in this Court after the 30-day notice period.

Needless to say, the two columns do not depict the same agreement. As such, the Debtors' separate averments that each column was at different times the *Settlement Agreement* are "irreconcilably inconsistent positions."[354]

When Mr. Ciccozzi complained that this new position was a repudiation of their agreement and denied him the negotiated consideration, the Debtors posited that he had only himself to blame. They asserted that Mr. Ciccozzi "made the deliberate choice to enter into a *Settlement Agreement* which, by its terms, ***was clearly an installment sale contract subject to Act 6***."[355] Noting that "[a] party is presumed to know the law," the Debtors argued that "[a]ny hardship as a result of the interpretation to comply with Pennsylvania law wasn't or ***should not have been unexpected***."[356] In sum, they contended Mr. Ciccozzi's ignorance of the legal consequences was not a proper basis to relieve him of his obligations under *Settlement Agreement* as modified by Act 6.[357]

The stunning hypocrisy of emphasizing Mr. Ciccozzi's presumed knowledge of the law is evident by the Debtors' simultaneous attempt to downplay Attorney Short's actual knowledge of installment land contracts and the applicability of Act 6. Despite his documented awareness of the relevant legal standards, they unconvincingly maintained that Attorney Short simply missed the same issue that everyone else failed to spot. Of course, Attorney Short did make the connection first—serendipitously, just before the Debtors' default[358]—and no one else had any

---

[354]   See G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009), as amended (Dec. 4, 2009).

[355]   *Debtors' Response to the Motion of Ronald A. Ciccozzi to Vacate and Set Aside the Order Approving the Mediated Settlement and to Rescind the Mediated Settlement Agreement*, Case No. 16-23695-GLT, Dkt. No. 192 at ¶ 8 (original emphasis removed, new emphasis added).

[356]   Id. at ¶ 6 (emphasis added).

[357]   Id. at ¶ 10.

[358]   *Debtors' Reply to Response of Ronald A. Ciccozzi to Debtors' Motion to Deny Ronald A. Ciccozzi's Request for Relief from Stay*, Case No. 16-23695-GLT, Dkt. No. 177 at n. 3.

reason to think that the Debtors would later adopt a position that was inconsistent with the *Settlement Agreement*.  Put simply, they were taken at their word that ***this*** was the deal.[359]

The inherent difficulty with the Debtors' position is that they are using Act 6 as a sword against a counterparty to a settlement, rather than the intended shield against an overreaching mortgagee.  Admittedly, the provisions of Act 6 are not waivable,[360] but that fact does not automatically immunize the Debtors' change in position from a claim of bad faith.  Context matters and this is not a commercial transaction, but a settlement agreement that would not exist but for the concessions made by both parties.  Rather than concede that Act 6 upends the parties' reasonable expectations, the Debtors demand a one-sided wholesale amendment of the *Settlement Agreement*.  In *Butko I*, the Court found that Attorney Short's prior knowledge proved that the Debtors induced Mr. Ciccozzi to enter into the *Settlement Agreement* by accepting default provisions they knew were unenforceable.  But even assuming there was no trap, the Debtors' bad faith is still manifest in their efforts to bind Mr. Ciccozzi to an agreement while denying him of the benefit of his bargain and foisting new obligations upon him.  Thus, no matter how one approaches the issue, the inconsistent positions and hypocritical supporting arguments do not denote a good faith mistake.

Once the Court finds "irreconcilably inconsistent positions" that were "adopted . . . in bad faith," judicial estoppel requires that "no lesser sanction [is] sufficient" to address the harm posed by the inconsistent positions.[361]  The Third Circuit has explained that judicial estoppel is

---

[359]    It should be not unreasonable for a Court to take a party at its word given the consequences of not being candid.  See Fed. R. Bankr. P. 9011.

[360]    See 41 Pa. Stat. Ann. § 408 ("Notwithstanding any other law, the provisions of this act may not be waived by any oral or written agreement executed by any person.").

[361]    G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d at 262 (quoting Chao v. Roy's Const., Inc., 517 F.3d 180, 186 n. 5 (3d Cir. 2008)) (internal quotation marks omitted).

"not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be" and "should only be applied to avoid a miscarriage of justice."[362]  The Debtors latch onto this point and accuse the Court of "throwing the baby out with the bath water" when a lesser sanction, such as a late fee, would have sufficed.[363]  But a late fee cannot restore the benefit to the bargain as they have re-written it because Act 6 so disproportionately enhances their rights over Mr. Ciccozzi.  To prove the point, the drawn out cure period and sale allegedly needed to terminate the cure rights are completely antithetical to the Debtors' agreement to promptly pay or walk away.  Plainly, there is no tailored remedy to account for a fundamentally different agreement.  Therefore, nothing short of judicial estoppel would deny the Debtors the benefit of their manipulation and protect the integrity of the judicial process that bound the parties to the *Settlement Agreement* in the first place.

The Court's application of judicial estoppel adheres to Pennsylvania law governing contracts generally.  The *Settlement Agreement* is after all a contract,[364] though one subject to Court approval.  Within the past year, the Third Circuit reiterated the "'central principle of contract interpretation that if a party knew or had reason to know of the other parties' interpretation of terms of a contract, the first party should be bound by that interpretation.'"[365]  It recognized that "[t]o prevent a silent party from later ambushing [the party's] unwitting opponents," a court must "reject the silent party's unexpressed reading."[366]  This case is not about the interpretation of contractual provisions, but the same logic holds—the Debtors knew Mr. Ciccozzi expected that the *Settlement*

---

[362]    Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003).

[363]    *Brief in Support of Motion to Amend Finding of Fact, Alter Judgment, for Relief from Judgment and/or For New Trial*, Case No. 16-23695-GLT, Dkt. No. 265 at 11-12; See *Response*, Dkt. No. 56 at 13-14.

[364]    See In re Columbia Gas System Inc., 50 F.3d 233, 238 (3d Cir. 1995).

[365]    In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 848 (3d Cir. 2020) (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 99 (3d Cir. 2001)).

[366]    Id.

*Agreement* to be enforced as written.  It would be unfair to allow the Debtors to rely on their prior silence with respect to Act 6 to now shatter those expectations.

Although the Debtors rage against *Butko I* and its judicial estoppel ruling, they ignore the pivotal fact that dispels any notion of injustice: *Butko I* preserved the *Settlement Agreement* and their last opportunity to complete a purchase of the Property.  Admittedly, the default provisions hung over them like the Sword of Damocles, but the Debtors could avert disaster so long as they continued to make payments.  The alternative, which the Court explicitly recognized many times, would have been to yield to the inescapable conclusion that there was no meeting of the minds with respect to the *Settlement Agreement* if Act 6 overrides all its essential terms.  Indeed, the default provisions are too vital and cannot be severed without changing the core expectations of the parties or depriving Mr. Ciccozzi of his bargained for consideration.  Thus, had the Court vacated its approval of the *Settlement Agreement* as Mr. Ciccozzi requested,[367] the Debtors would have been left no better off with an expired option to purchase under the *Lease*.

The Debtors tout the financial implications as the clearest evidence of manifest injustice.  They argue that it is demonstrably unfair for them to lose approximately $190,000 of equity in the Property, which includes $80,000 of their retirement savings, when Mr. Ciccozzi is owed only about $35,000 and they have already paid $203,571.92 towards the purchase.[368]  It is undeniable that the Debtors face the loss of their investment, but the economic reality is far more complicated than they acknowledge.

---

[367]    Mr. Ciccozzi's request to vacate the *Settlement Agreement* was withdrawn without prejudice prior to *Butko I* and could have been renewed had the Court sided with the Debtors with respect to Act 6.  The Court discerns no potential acceptance of Act 6 from his decision to press the alleged default at that time.

[368]    *Motion*, Dkt. No. 52 at ¶¶ 2, 17.d; *Response*, Dkt. No. 56 at n. 1.

"Equity" is a loaded term in this case. The concept normally refers to the amount by which the value of an owner's interest in property exceeds any encumbrances.[369] Though a vendee under an installment land contract is the beneficial owner of the Property,[370] Pennsylvania courts have traditionally permitted the forfeiture of partial payments upon the vendee's default.[371] For that reason, the Debtors' investment is different from an equity interest in the Property. Moreover, the Debtors' payments to Mr. Ciccozzi prior to September 2017 were pursuant to a "true lease" under which they built no equity.[372] In other words, forfeiture of their investment has always been the consequence of an inability to complete the purchase. That the sting of a default increased with each payment made under the *Settlement Agreement* did not appreciably change the landscape or render the arrangement unfair.

The Court is also unconvinced that Mr. Ciccozzi is necessarily receiving a windfall at the Debtors' expense. Under the circumstances, the amount paid versus the unpaid balance does not tell the whole story. Mr. Ciccozzi has been forced to endure years of costly litigation both here and in the State Court because the Debtors continually challenge the express terms of the *Settlement Agreement*. Meanwhile, he has received no payments since August 2018 (and has no right to any), but must pay the real estate taxes and insurance costs for a property he does not possess. At this point, obtaining possession of the Property will not make him whole.

---

[369]   EQUITY, Black's Law Dictionary (11th ed. 2019).

[370]   See Stillwater Lakes Civic Ass'n, Inc. v. Krawitz, 772 A.2d at 120.

[371]   Kaufman Hotel & Rest. Co. v. Thomas, 411 Pa. 87, 92, 190 A.2d 434, 436 (1963); Sanders v. Brock, 230 Pa. 609, 615, 79 A. 772, 773 (1911); Luria v. Robbins, 223 Pa. Super. 456, 465, 302 A.2d 361, 366 (1973); Ditzler v. Kinsell, 34 Pa. D. & C.3d 72, 74 (Pa. Com. Pl. 1984); see In re Cremen, 34 B.R. 617, 619 (Bankr. M.D. Pa. 1983); see also Nikole, Inc. v. Klinger, 412 Pa. Super. 289, 304, 603 A.2d 587, 594 (1992) (where both the vendor and vendee breached, the vendor should be compensated for the vendee's use of the property prior to the breach); Lancellotti v. Thomas, 341 Pa. Super. 1, 9, 491 A.2d 117, 121 (1985) (acknowledging the rule against a recovery by the breaching party has been applied to the sale of real property, but holding that the breaching party should be entitled to recover "any benefit . . . in excess of the loss that he has caused by his own breach.").

[372]   See Butko I, 584 B.R. at 100; *Memorandum Order*, Case No. 16-23695-GLT, Dkt. No. 41.

For all these reasons, the Court finds that the Debtors have not established the existence of manifest injustice.

### F.    <u>Bankruptcy Rule 9011</u>

Having found no basis for reconsideration of *Butko II* (or *Butko I* for that matter), the Court now turns to the *Order to Show Cause*.  The Court ordered the Debtors and Attorney Feldman to show cause why it should not deny the *Motion* and impose sanctions against them under Bankruptcy Rule 9011(b)(1)-(3) because the *Motion* appeared to be a shameless collateral attack on the Court's prior orders.  After a thorough review of both the *Motion* and *Response*, the Court concludes that the Debtors and Attorney Feldman have, in fact, violated Bankruptcy Rule 9011.

Generally, Bankruptcy Rule 9011(b) targets objectively unreasonable conduct.[373] It provides in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary

---

[373]    See <u>In re Taylor</u>, 655 F.3d 274, 282 (3d Cir. 2011) (citing <u>Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.</u>, 57 F.3d 1215, 1225 (3d Cir.1995)).

support after a reasonable opportunity for further investigation or discovery . . .[374]

Under subsection (b)(2), the focus is not whether the claim asserted was frivolous, but whether the attorney conducted an adequate inquiry into the facts and law before filing the claim.[375]  Similarly, the "concern" under subsection (b)(3) "is not the truth or falsity of the representation in itself, but rather whether the party making the representation reasonably believed it at the time to have evidentiary support."[376]

Consistent with the Court's perception of the *Motion*, three of the "flaws" identified in the *Order to Show Cause* focused on the apparent barriers to the Debtors' unambiguous attempt to re-litigate their entitlement to Act 6 notice and protections.[377]  The Court is now satisfied that Judge Fouse did not *necessarily* find that the *Judgment* was "not a confessed judgment" after

---

[374]    Fed. R. Bankr. P. 9011(b)(1)-(3).

[375]    See Ettinger & Assocs. v. Miller (In re Miller), 730 F.3d 198, 203 (3d Cir. 2013); In re Dahlgren, 494 F. App'x 201, 204 (3d Cir. 2012); In re Excello Press, Inc., 967 F.2d 1109, 1111-1112 (7th Cir. 1992).

[376]    In re Taylor, 655 F.3d at 282.

[377]    To reiterate, these flaws are:

> 1.    Based on the Debtors' own representations to this Court, the [State Court] "earlier ruled that the right to a judgment for possession under the [*Settlement*] *Agreement* was not a confessed judgment provision," barring the Court from re-litigating this issue under *Rooker-Feldman* doctrine.
>
> * * *
>
> 3.    This Court has previously held that the Debtors are judicially estopped from raising Act 6 notice defenses.  They did not appeal and the ruling is now final.
>
> 4.    The [State Court] held that this Court's judicial estoppel decision was res judicata in the state court [proceedings] initiated by the Debtors, expressly rejecting their argument that it was merely non-binding dicta.  Thus, any further attempt by the Debtors to assert Act 6 notice defenses is also barred by both res judicata and *Rooker-Feldman*.

Order to Show Cause, Dkt. No. 54 at ¶¶ 1, 3- 4 (footnotes omitted).

reviewing his orders.[378]  Even so, the Debtors' response to the remaining issues reveals their position to be wholly unsupported by fact or law.

The Debtors and Attorney Feldman hang everything on the availability of Act 6 notice, which requires the associated discussion in *Butko I* to be dicta.  Without belaboring what the Court has already thoroughly explained above, the judicial estoppel ruling was not dicta on the day *Butko I* entered and could not reasonably have been mistaken as such after the Court granted stay relief, denied reconsideration, and entered the *Judgment*.[379]  In fact, the dicta characterization was explicitly raised and rejected in the 2016 case.  The Debtors fail to explain how the Court repeatedly disposed of their Act 6 arguments without adopting the judicial estoppel ruling.  And their assertion that this Court is not bound by Judge Fouse's *res judicata* holding solely because he erred in its application runs directly afoul of *Rooker-Feldman*, contrary to their illogical interpretation of the doctrine.[380]

At this stage, the issue is not merely that the arguments lacked merit, but that it should have been obvious to everyone that they lacked merit because the Debtors were asking the Court to decide the same issue for the **_sixth_** time.  While the Court has little doubt that they are desperate to retain their home, their desire for a happy ending does not grant them license to perpetually raise the same contentions anew as if stuck in a *Groundhog Day*-like time loop.  By continuing to press Act 6, the Debtors have shown a willful ignorance of, if not indifference to,

---

[378]    *Exhibit 6*, Dkt. No. 56-3 at ¶ 1.c.  At the show cause hearing, the Court indicated its agreement that the order containing this statement was not a final order.  At the time, however, the Court did not consider the far more complex issue of whether Judge Fouse necessarily adopted that finding in his final decision.  The Court suspects he did in as much as he found "actual litigation" sufficient to invoke *res judicata*, but the answer likely hinges on whether Judge Fouse viewed the *Judgment* in isolation or as part of the greater proceedings before this Court.  In any event, the Court finds enough uncertainty to render sanctions inappropriate.

[379]    See Section IV.B.1.i, *supra*.

[380]    Id.

the facts of this case.  Moreover, considering their established bad faith towards Mr. Ciccozzi, this litigation strategy strongly implies an improper purpose, such as to gain leverage over him with the threat of increased delays and costs.

Attorney Feldman's involvement is also particularly concerning.  The Court understands that this dispute already had a long and ugly history before he was retained, but, *at a minimum*, Attorney Feldman's research into the law and the 2016 case were grossly inadequate under the circumstances.  It was not reasonable for him to have believed that Act 6 notice was still a valid defense.  But even when the Court read the *Motion* to imply a more nuanced approach not foreclosed by *Butko I*,[381] the arguments lacked support.  Attorney Feldman's research apparently failed to reveal the shift away from a jurisdictional view of statutory notice requirements for mortgage defaults.  More importantly, however, his assertion that the *Judgment* was "confessed" remained baseless even after the *Order to Show Cause* pointed out the absurdity of the argument given the available facts.[382]  The Court is also shocked by Attorney Feldman's clear lack of preparation for the show cause hearing and his inability to elaborate on his written submissions.

For all these reasons, the Court finds that the Debtors and Attorney Feldman have violated Bankruptcy Rule 9011(b) by advancing frivolous arguments that were unequivocally not warranted by fact or existing law and for an improper purpose.[383]

---

[381]    See Sections IV.B.2 and IV.C, *supra*.

[382]    See *Order to Show Cause*, Dkt. No. 54 at ¶ 2.  Generally speaking, it is truly stunning that the *Motion* prompted an immediate *Order to Show Cause* that threatened sanctions for frivolous arguments and Attorney Feldman chose to copy and paste those arguments from the *Motion* into the *Response* without amplification.

[383]    The Court finds no violation in the *Motion*'s failure to address the "by analogy" analysis of *Butko II*.  See Order to Show Cause, Dkt. No. 54 at ¶ 5.  With the benefit of additional briefing, the Court understands how this issue was not necessarily implicated by the *Motion*.  Moreover, while the Court disagrees with the Debtors' contention that a sheriff's sale is required to terminate a vendee's equitable interest under Act 6, their position is not without legal support.

Once a court determines that an attorney or a party has violated the rule, it may impose an appropriate sanction.[384]  The sanction must "be limited to what is sufficient to deter repetition of such conduct," and may consist of a monetary penalty payable to the Court or "directives of a non-monetary nature."[385]

To be sure, the violations here are significant, but the Court will not enter sanctions against the Debtors for now.  Though it may be another example of wishful thinking, a further repetition of the Debtors' violative conduct is unlikely after this decision.  The end is near, and barring a successful appeal, the competing rights to the Property have been settled.  Thus, there is little utility to imposing any sanction against them and, candidly, the Court has no desire to add insult to injury when the loss of their home appears inevitable.  While Mr. Ciccozzi requested reasonable attorney's fees for the violation, his request is denied because fee-shifting is unavailable when the Court initiates a Bankruptcy Rule 9011 inquiry *sua sponte*.[386]  If, however, the Debtors' persistence surprises the Court yet again, it will not hesitate to act and may consider the imposition of fines and other non-monetary directives as may be appropriate.

With respect Attorney Feldman, the Court finds that the issuance of this decision should serve as a sufficient public admonishment for his unreasonable conduct and deter future repetition.

---

[384]    Fed. R. Bankr. P. 9011(c).

[385]    Fed. R. Bankr. P. 9011(c)(2).

[386]    Id.

76

## V.    CONCLUSION

In light of the foregoing, the *Motion* must be denied.  This opinion constitutes the

Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The

Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.


GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Dated: January 8, 2021


<u>Case administrator to mail to</u>:
Debtors
Max C. Feldman, Esq.
Christian M. Rieger, Esq.