FILED
2/10/21 11:25 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 20-21255-GLT |
| | : | Chapter 13 |
| **RICHARD P. BUTKO AND** | : | |
| **LORRAINE E. BUTKO,** | : | |
| | : | |
| *Debtors*. | : | |
| | : | |
| **RICHARD P. BUTKO AND** | : | |
| **LORRAINE E. BUTKO,** | : | |
| | : | |
| *Movants*, | : | Related to Dkt. Nos. 77 and 85 |
| | : | |
| v. | : | |
| | : | |
| **RONALD A. CICCOZZI,** | : | |
| | : | |
| *Respondent*. | : | |

| | |
|---|---|
| Max C. Feldman, Esq. | Christian M. Rieger, Esq. |
| Law Offices of Max C. Feldman | The Law Office of Christian M. Rieger |
| Coraopolis, PA | Pittsburgh, PA |
| *Attorney for the Butkos* | *Attorney for Mr. Ciccozzi* |

### MEMORANDUM OPINION

One month ago, the Court issued a 77-page *Memorandum Opinion*[1] declining to reconsider its July 1, 2020 order granting Ronald A. Ciccozzi relief from the automatic stay to pursue his rights to a residential property in Monaca, Pennsylvania following a default by Richard P. and Lorraine E. Butko ("Debtors") under an installment land contract.[2] The Debtors

---

[1]   Butko v. Ciccozzi (In re Butko), No. 20-21255-GLT, 2021 WL 115558 (Bankr. W.D. Pa. Jan. 8, 2021) ("Butko III"), located on the docket at No. 66.  Unless otherwise stated, all docket references are to the present case. See Case No. 20-21255-GLT.

[2]   *Order* ("Stay Relief Order"), Dkt. No. 42.  See Ciccozzi v. Butko (In re Butko), 617 B.R. 532 (Bankr. W.D. Pa. 2020) ("Butko II"), located on the docket at No. 41 and setting forth the Court's rationale for the *Stay Relief Order*.

have since filed an appeal of the *Stay Relief Order*[3] (though not the recent order denying reconsideration[4]), while Mr. Ciccozzi has scheduled an eviction to take place before the end of the month.  Pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8007(a)(1), the Debtors now seek a stay of that eviction pending their appeal to the United States District Court for the Western District of Pennsylvania.[5]  Mr. Ciccozzi opposes the imposition of a stay.[6] For the reasons set forth below, the Court will deny the *Motion*.

## I.    BACKGROUND

In *Butko III*, the Court set forth the long and tortured history of this dispute in excruciating detail.[7]  That recitation is incorporated herein by reference.  For convenience, the Court offers only a *brief* overview.[8]

The dispute between the Debtors and Mr. Ciccozzi arises from their unsuccessful efforts to purchase the Monaca property ("Property") from him and his now deceased wife.[9]  The original 2009 transaction was structured as an installment land contract, but was replaced by a lease with an option to purchase by a date certain after the Debtors defaulted.[10]  Another payment default in 2016 prompted the Debtors to file their first bankruptcy case in hopes that

---

[3]    Notice of Appeal, Dkt. No. 70.

[4]    *Order*, Dkt. No. 67.  The Court notes that Fed. R. Bankr. P. 8002(b)(3) requires a party who intends to challenge an order disposing of a motion for reconsideration under Fed. R. Bankr. P. 7052 to file a notice of appeal or an amended notice of appeal.

[5]    *Motion for an Expedited Hearing on Debtor's Motion for Stay Pending Appeal and Motion for Stay Pending Appeal* ("Motion"), Dkt. No. 77.

[6]    *Respondent Ronald Ciccozzi's Response to Debtors' Motion for Stay Pending Appeal* ("Response"), Dkt. No. 85.

[7]    See Butko III, 2021 WL 115558, at *1-17.

[8]    In recognition that the following background is intended only as a summary, nothing stated herein should be read to  conflict with much more detailed background in *Butko III*.

[9]    Butko III, 2021 WL 115558, at *2.

[10]    Id.

they could cure the default and complete the sale through a chapter 13 plan.[11]  By this point, Mr. Ciccozzi no longer wished to sell the Property and opposed their plan.[12]

The parties were seemingly able to break the impasse through a mediated settlement ("Settlement Agreement") that gave the Debtors one last chance to complete the sale.[13]  In broad strokes, the *Settlement Agreement* required them to promptly pay or walk away.[14]  The Debtors agreed that if they were unable to cure a payment default within ten days, their rights to the Property would terminate, Mr. Ciccozzi would be entitled to stay relief, and they would voluntarily leave within 30 days.[15]  If they failed to do so, the *Settlement Agreement* provided that the Court would enter a judgment for possession in favor of Mr. Ciccozzi.[16]  Though concerned about the default procedures, the Court ultimately approved the *Settlement Agreement* at the Debtors' insistence.[17]

Shortly thereafter, the Debtors defaulted.[18]  But to everyone's surprise, they demanded Mr. Ciccozzi provide them with an "Act 6" notice,[19] extending their cure rights indefinitely until he purportedly complied with his statutory obligations because the *Settlement Agreement* serendipitously happened to fit the definition of an installment land contract subject to Act 6.[20]  Mr. Ciccozzi was outraged, and briefly moved to vacate the *Settlement Agreement*

---

[11]  Id.

[12]  Id.

[13]  Id. at *3.

[14]  Id.

[15]  Id.

[16]  Id.

[17]  Id. at *4.

[18]  Id.

[19]  "Act 6" is the common name for the Pennsylvania Loan Interest and Protection Law, 41 Pa. Stat. Ann. § 101 *et seq.*, that requires, among other things, that mortgagees' provide homeowners with a statutory notice prior to any collection action.  See 41 Pa. Stat. Ann. § 403(a).

[20]  Butko III, 2021 WL 115558, at *4.

before settling on its strict enforcement.[21]  When it became clear that a consensual resolution was not achievable, the Court issued a *Memorandum Opinion* dated April 9, 2018 ("Butko I").[22]  The Court held that the Debtors were judicially estopped from asserting Act 6 to rewrite the *Settlement Agreement*, but that Mr. Ciccozzi had waived the defaults by retaining the untimely payments.[23]  Neither party appealed *Butko I*.[24]

Five months later, the Debtors defaulted yet again.[25]  This time, they could only muster a flimsy procedural technicality in opposition to Mr. Ciccozzi's request for stay relief.[26]  After stay relief entered, however, the Debtors moved for reconsideration alleging that *Butko I*'s judicial estoppel ruling was non-binding dicta and should be disregarded.[27]  After a hearing, the Court denied reconsideration, emphasizing its view that *Butko I* made clear its intent to hold the parties to the *Settlement Agreement* strictly as written and not as modified by Act 6.[28]  Mr. Ciccozzi then requested the Court enter a judgment for possession, which it did (the "Judgment") after the parties submitted briefs concurring that it had jurisdiction to do so.[29]  The Debtors did not appeal any of these rulings, and their chapter 13 case was later dismissed due to payment defaults under their confirmed plan.[30]

---

[21]     Id. at *4-5.

[22]     Butko v. Ciccozzi (In re Butko), 584 B.R. 97, 99 (Bankr. W.D. Pa. 2018)

[23]     Id. at 106-110; see also Butko III, 2021 WL 115558, at *5-7.

[24]     Id. at *7.

[25]     Id.

[26]     Id.

[27]     Id. at *8-10.

[28]     Id. at *10.

[29]     Id. at *10-11.  Notably, the Court stayed the effectiveness of the Judgment approximately 45 days to permit the Debtors to either file and appeal and secure a more permanent stay, or make arrangements to leave the Property.

[30]     Id. at *11.

Undaunted, the Debtors filed suit against Mr. Ciccozzi in the Court of Common Pleas of Beaver County ("State Court") seeking a declaratory judgment that he was required to provide them an Act 6 notice.[31]  Contrary to their assertions, the State Court ultimately found that *Butko I*'s judicial estoppel ruling was not dicta and, as a result, the relief requested was barred by res judicata.[32]  The Debtors did not appeal the dismissal of the State Court action.[33]  Instead, they commenced the present chapter 13 case.[34]

In response to the new bankruptcy filing, Mr. Ciccozzi once again moved for stay relief.[35]  The Debtors opposed, arguing that their possessory interest in the Property was entitled to protection while they cured their default under the *Settlement Agreement* through a chapter 13 plan.[36]  Relying on *In re Grove*,[37] they asserted that vendees under an installment land contract (like themselves) retain an interest in the property until it is sold.[38]  The Debtors did not offer any other arguments in support at that time, nor did they address the legal effect of *Butko I* or the *Judgment*.[39]  Meanwhile, they filed a plan that contemplated a sale of the Property by May 31, 2021 as a means to pay off Mr. Ciccozzi and all other creditors.[40]

On July 1, 2020, the Court entered the *Stay Relief Order* accompanied by *Butko II*.[41]  The Court was unpersuaded by *In re Grove* because the passage relied upon by the Debtors

---

[31]    Id. at *11-12.

[32]    Id. at *12.

[33]    Id. at *13.

[34]    Id.

[35]    Id.

[36]    Id.

[37]    Bankers Tr. Co. v. Grove (In re Grove), 208 B.R. 845 (Bankr. W.D. Pa. 1997).

[38]    Butko III, 2021 WL 115558, at *13.

[39]    Id.

[40]    Id.

[41]    Butko II, 617 B.R. at 532.

was dicta and did not address the fact that installment land contracts can be enforced through judicial proceedings rather than sheriff's sales.[42]  Instead, *Butko II* adopted the "by analogy" approach articulated by *In re Rowe*,[43] holding that the reference to a sheriff's sale in the cure provision of Act 6 should be interpreted to encompass a judgment terminating a vendee's rights under an installment land contract.[44]  Accordingly, the Court found that the finality of the *Judgment* meant their "equitable interest in the property ha[d] long since terminated, leaving them with no right to cure their default under state or federal law."[45]

The Debtors timely moved for reconsideration, arguing that *Butko II* was clearly erroneous because: (1) the *Judgment* was void as the Court was deprived of subject matter jurisdiction by Mr. Ciccozzi's failure to provide an Act 6 notice; and (2) the *Judgment* was a "confessed judgment" and not a final order until "conformed" under Act 6.[46]  They also repeated their prior claim that *Butko I*'s judicial estoppel ruling was non-binding dicta.[47]  Perceiving the motion as "a brazen collateral attack on *Butko I*," the Court detailed its concerns and ordered both the Debtors and their counsel, Attorney Max C. Feldman, to show cause why the Court should not deny it and impose sanctions on them under Bankruptcy Rule 9011(b).[48]  The Debtors filed a written response, to which Attorney Feldman orally joined.[49]

On January 8, 2021, the Court issued *Butko III*, finding that: (1) reconsideration of *Butko II* (and *Butko I* to the extent it was argued) was unwarranted; (2) the Debtors and Attorney

---

[42]     Id. at 536.

[43]     Bankers Rowe v. Connors (In re Rowe), 110 B.R. 712, 722 (Bankr. E.D. Pa. 1990).

[44]     Butko II, 617 B.R. at 534-35.

[45]     Id. at 536.

[46]     Butko III, 2021 WL 115558, at *14-15.

[47]     Id. at *14.

[48]     Id. at *15-16.

[49]     Id. at *16-17.

Feldman violated Bankruptcy Rule 9011(b) by advancing arguments not warranted by fact or law and for an improper purpose; and (3) sanctions were unnecessary because the violative conduct was unlikely to repeat.[50]  Given the gravity of the circumstances, the Court's approach was exhaustive, considering every argument that could be gleaned from the motion for reconsideration, response to the order to show cause, and oral argument.[51]  In the end, most of the arguments raised by the Debtors were foreclosed by *Butko I* or unsupported by the facts.

Less than two weeks later, the Debtors appealed the *Stay Relief Order*.[52]  On February 1, 2021, nearly a month after *Butko III*, they filed the present *Motion* seeking a stay pending their appeal and a hearing on an expedited basis.[53]  The sudden need for expediency was apparently triggered by the Beaver County sheriff's office having scheduled an eviction for February 23, 2021.[54]  Mr. Ciccozzi filed a response in opposition to a stay, asserting that the Debtors are unlikely to prevail on appeal for essentially the reasons stated in *Butko III*.[55]

The Court initially scheduled the *Motion* for hearing on February 5, 2021, but continued it to February 9, 2021 at the Debtors' request.[56]  Counsel for both parties appeared at the continued hearing and presented oral arguments.  At its conclusion, the Court denied the

---

[50]   Id. at *22-39.

[51]   See Id. at *20.

[52]   *Notice of Appeal*, Dkt. No. 70.

[53]   *Motion*, Dkt. No. 77.

[54]   Id. at ¶ 2.  Although the *Motion* was given expedited consideration, the Court finds the delay between the filing of the *Notice of Appeal* and the *Motion* to be curious as the perceived need for a stay pending appeal should have been obvious.  Moreover, once the stay under Fed. R. Bankr. P. 4001(a)(3) lapsed in July 2020, there was no impediment from the Court preventing Mr. Ciccozzi from exercising his rights under the *Stay Relief Order*.

[55]   *Response*, Dkt. No. 85 at ¶¶ 8-16.

[56]   The expedited hearing was scheduled same day the *Motion* was filed, see Dkt. No. 80, but the Debtors waited three days before seeking a continuance based on the unavailability of their counsel due to "a trial that scheduled in the state court . . . since November 2020 that cannot be rescheduled."  *Motion for Postponement*, Dkt. No. 87 at ¶ 4.

*Motion* and indicated that it would memorialize its findings in a memorandum to accompany the order.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).   Moreover, Bankruptcy Rule 8007(a)(1) requires that a request for stay pending appeal be made in the bankruptcy court in the first instance.[57]

## III.    DISCUSSION

### A.    <u>The Standard for a Stay Pending Appeal</u>

To determine whether to grant a stay pending appeal, a court must balance the following four factors based on a consideration of their relative weight:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[58]

Although the analysis requires a balancing of all four factors so as "not to ignore the many gray shadings stay requests present,"[59] the first two are the "most critical."[60]   Unless a movant can

---

[57]     Fed. R. Bankr. P. 8007(a)(1).

[58]     <u>In re Revel AC, Inc.</u>, 802 F.3d 558, 568 (3d Cir. 2015) (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)) (internal quotation marks omitted).  The factors are the same as those considered on an application for a preliminary injunction.  <u>Id.</u>

[59]     <u>Id.</u> (citing <u>Brady v. Nat'l Football League</u>, 640 F.3d 785, 789 (8th Cir. 2011)).

[60]     <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

make a showing with respect to those factors, the court need not consider the final two or engage in a balancing of the equities.[61]

### 1.    Likelihood of Success on the Merits

A strong showing of a likelihood of success on the merits is "arguably" the most important factor,[62] because "jurisdiction exists only to remedy legal wrongs" regardless of whether the absence of a stay would spell "disaster" for the movant.[63]   In the Third Circuit, "a sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'"[64]   Put differently, the likelihood of winning on appeal must be significantly "better than negligible,"[65] but not necessarily "more likely than not."[66]

In the *Motion*, the Debtors identify five issues on appeal, but argue the likelihood of success as to only four:[67]

1.   Did the Court have subject matter jurisdiction in *Butko I*[68] to enter the judgment?

2.   Are the [the Debtors] judicial[ly] estopped or barred by the *Rooker-Feldman*[69] doctrine from challenging the judgment for possession on the ground[s] of Ciccozzi's non-compliance with [an] Act 6 notice requirement?

---

[61]    See In re Revel AC, Inc., 802 F.3d at 569; Scott v. U.S. Bank, N.A. (In re Scott), 605 B.R. 372, 377 (Bankr. W.D. Pa. 2019) (citing Nken v. Holder, 556 U.S. at 434).

[62]    In re Revel AC, Inc., 802 F.3d at 568.

[63]    Roland Mach. Co. v. Dresser Indus., 749 F.2d 380, 387 (7th Cir.1984).

[64]    In re Revel AC, Inc., 802 F.3d at 568–69 (quoting Singer Mgmt.Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir.2011)).

[65]    Nken v. Holder, 556 U.S. at 434.

[66]    Singer Mgmt.Consultants, Inc. v. Milgram, 650 F.3d at 229.

[67]    They do not address the likelihood of prevailing on their claim that the entry of the *Stay Relief Order* was manifestly unjust.  See *Motion*, Dkt. No. 77 at n. 10.

[68]    For the record, the Court did not enter the *Judgment* in *Butko I*.

[69]    See Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573, 580 n. 13 (3d Cir. 2005) ("The doctrine takes its name from two Supreme Court cases, viz., Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).").

3. Is the judgment for possession a confessed judgment?

4. Can the vendee's equitable interest in an installment land contract governed by Act 6 be terminated without a sheriff's sale?[70]

The Court notes that only the fourth issue was raised with respect to *Butko II* and the *Stay Relief Order*, while the others were argued for the first time on reconsideration.[71]   In any event, the Debtors contend that success on any one of these issues will result in an appellate ruling that they retain an interest in the Property, enabling a sale that will satisfy all claims against them.[72]   Thus, the Court will address each in turn.   Because time is of the essence, the Court must forgo a comprehensive discussion of each issue and instead use the analysis of *Butko III* as a starting point.

### i.     The Court Lacked Subject Matter Jurisdiction

In *Butko III*, the Debtors asserted that the Court lacked subject matter jurisdiction to enter the *Judgment* because an Act 6 notice is a jurisdictional prerequisite to any legal action to enforce a mortgage.[73]   The Court rejected this argument, explaining that while many decisions characterize section 403(a) of Act 6[74] as jurisdictional, a subsequent Pennsylvania Supreme Court decision signaled a departure from that view.[75]   Indeed, the Court found *Beneficial Consumer Disc. Co. v. Vukman*[76] significant for several reasons: (1) it emphasized that absent a clear legislative mandate, laws should not be construed to decrease the jurisdiction of the courts;

---

[70]     *Motion*, Dkt. No. 77 at ¶ 33.

[71]     Given that the Debtors did not appeal the order denying reconsideration, the Court is unsure whether the District Court will entertain these post-*Butko II* issues.   See Fed. R. Bankr. P. 8002(b)(3).   Because the Court does not believe the Debtors are likely to succeed on these issues anyway, it will assume that all are in play.

[72]     *Motion*, Dkt. No. 77 at ¶ 34.

[73]     Butko III, 2021 WL 115558, at *25.

[74]     41 Pa. Stat. Ann. § 403(a).

[75]     Butko III, 2021 WL 115558, at *25.

[76]     Beneficial Consumer Disc. Co. v. Vukman, 621 Pa. 192, 200, 77 A.3d 547, 551 (2013).

(2) it drew a distinction between jurisdiction and the authority to effect a certain result; (3) it held that an analogous statutory notice under "Act 91" was not jurisdictional; and (4) post-*Vukman*, cases have held that non-compliance with statutory notice requirements did not divest the court of jurisdiction over mortgage foreclosure actions.[77]

The Debtors now argue that they are likely to prevail on appeal because the Court made an unwarranted prediction about the application of *Vukman*, but offered very little in support.[78] Their insistence that the language of section 403(a) of Act 6 is clearly jurisdictional fails to consider that the analogous provision of Act 91 uses essentially the same language.[79] While the Debtors rely on *JP Morgan Chase Bank N.A. v. Taggart*[80] to show that the Pennsylvania Supreme Court does not view Act 6 and Act 99 *in pari materia*,[81] it only held that the word "any" in their analogous sections had to be interpreted differently because of additional Act 91 provisions not found in Act 6.[82] They also posit that the anti-waiver provision of Act 6,[83]

---

[77]    Butko III, 2021 WL 115558, at *25-26.

[78]    See *Motion*, Dkt. No. 77 at ¶¶ 35-46.

[79]    Cf. 41 Pa. Stat. Ann. § 403(a) ("Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.") with 35 Pa. Stat. Ann. § 1680.402c(a) ("Before any mortgagee may accelerate the maturity of any mortgage obligation covered under this article, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the mortgage debtor for such mortgage obligation, such mortgagee shall give the mortgagor notice as described in section 403-C.").

[80]    JP Morgan Chase Bank N.A. v. Taggart, 651 Pa. 98, 107, 203 A.3d 187, 192 (2019).

[81]    *Motion*, Dkt. No. 77 at ¶ 46.

[82]    JP Morgan Chase Bank N.A. v. Taggart, 651 Pa. at 107-114. Both section 403(a) of Act 6 and section 1680.402c(a) of Act 91 require the mortgagee to provide the statutory notice before "*any*" legal action." See n.79, *supra*. Because Act 91 has an additional provisions that expressly provide that no other notice is required once a lender provides a pre-foreclosure notice, see 35 Pa. Stat. Ann. §§ 1680.403c(d), (g), courts have held that Act 91 does not require a second pre-foreclosure notice if an earlier action was withdrawn. JP Morgan Chase Bank N.A. v. Taggart, 651 Pa. at 107. Thus, "any" for Act 91purposes means "of a type," rather than "each and every." Id. at 107-108. Because Act 6 does not have a similar exception, and in light of its consumer protection purpose, the court held that "any" under section 403(a) of Act 6 must be construed differently than section 1680.402c(a) of Act 91. Id. at 114-115.

[83]    41 Pa. Stat. Ann. § 408.

which Act 91 does not have, evidences a legislative intent to "imbue the Act's protections with the same characteristic given to subject matter jurisdiction provisions. . . ."[84]  Of course, the unwaivability of a statutory requirement is not inherently jurisdictional and the Debtors do not cite any authority to suggest otherwise.

In the end, the Debtors' showing on this issue is weak because it focuses on the wisdom of equating Act 6 to Act 91, rather than engaging *Vukman*'s analysis distinguishing jurisdictional requirements from procedural ones under Pennsylvania law.[85]  It is also important to remember this particularly esoteric question only arises because they have been sanctioned for bad faith conduct.  If the Debtors are correct and an Act 6 notice is jurisdictional, then it undermines the efficacy of that sanction and the Court would be compelled on remand to consider other avenues not inconsistent with the District Court's mandate to ensure they do not benefit from their chicanery.[86]

### ii.    Holding that the Debtors were Judicially Estopped was Error

To this day, the Debtors perversely maintain that *Butko I*'s judicial estoppel ruling from April 2018 is non-binding dicta that somehow has never been adopted despite the fact that they continually raise Act 6 notice as a defense and the Court has repeatedly rejected it based on *Butko I*.  ***They are wrong, and this argument is knowingly and willfully frivolous***.  As the Court reiterated in *Butko III*, Mr. Ciccozzi could only have waived the untimeliness of the Debtors' late payments if they no longer had the right to cure their default, precluding any notion that

---

[84]     *Motion*, Dkt. No. 77 at ¶ 40 (emphasis omitted).

[85]     See <u>Butko III</u>, 2021 WL 115558, at *25 (citing <u>Beneficial Consumer Disc. Co. v. Vukman</u>, 621 Pa. at 201-02).

[86]     See <u>Id.</u> at *32-36.

extended cure rights under Act 6 were still in play after *Butko I*.[87]  The Debtors also conveniently

forget that they expressly asked for a ruling on the applicability of Act 6 in *Butko I*.[88]

The Debtors do not address these points in the *Motion*.[89]  Instead, they seize on

the "implicit" adoption of *Butko I* as the basis for denying them reconsideration in the 2016 case

to argue that the Court essentially kept its rationale secret and deprived them of an ability to

appeal.[90]  This assertion is unsupportable and would be borne out as such by a transcript of the

November 2, 2018 hearing.  In fact, this contention appears conjured from the Debtors' selective

quoting of *Butko III*:

> Noting its frustration with the rehashing of old arguments, the Court
> indicated that *Butko I* made clear its intent to hold the parties to the
> *Settlement Agreement* strictly as written and not as modified by Act 6.[91]
>
> * * *
>
> In denying their motion for reconsideration, the Court held that *Butko I*
> evidenced its intent and rationale for enforcing the *Settlement Agreement*
> strictly as written. In other words, the Court <u>implicitly</u>, if not explicitly,
> rejected the assertion that the Debtors were entitled to an Act 6 notice for
> the reasons stated in *Butko I*.[92]

Frankly, it is wholly incredible to believe that the Debtors would sit idly by having no idea why

the Court denied reconsideration when that ruling paved the way for entry of the *Judgment*.

---

[87]     <u>Id.</u> at *23.

[88]     <u>See Id.</u> at *4-5, 23.

[89]     <u>See</u> *Motion*, Dkt. No. 77 at ¶¶ 47-67.  Most of the Debtors' argument is simply copied from prior
submissions, which is why they spend approximately six pages outlining the purported flaws in the Court's
application of judicial estoppel in *Butko I* despite it not being an issue on appeal.  <u>See Id.</u> ¶¶ 49-58.

[90]     <u>Id.</u> at ¶¶ 59-60.

[91]     <u>Butko III</u>, 2021 WL 115558, at *10.

[92]     <u>Id.</u> at *24 (underline added).

Thus, the Debtors have **no chance** of success on appeal as to this issue because their arguments are based on an abject denial of the record.[93]

### iii.    The *Judgment* is Confessed

After *Butko II*, the Debtors argued that the Court's reliance on the *Judgment* was misplaced because it was a judgment by confession, and therefore not final until conformed under section 407(a) of Act 6.[94]  As expounded upon in *Butko III*, however, they were less than clear as to why the Judgment was confessed.[95]  Beyond a general statement that it "ha[d] all the qualities of a confessed judgment," the Debtors' precise theory vacillated between citing the lack of an Act 6 notice to relying on the procedure outlined in the *Settlement Agreement* without regard to actual process.[96]  The Court rejected the idea that actual process could be irrelevant as "a bizarre assertion of form over substance," emphasizing that "the fundamental indicia of a judgment by confession are entry without **notice or an opportunity** to be heard, not entry without the **right** to be heard."[97]  In sum, the Court held that "the Debtors cannot ignore the fact their defenses were fully litigated and judicially resolved."[98]

In support of their appeal, the Debtors now offer a stunning refinement to this argument: the Court exceeded its legal authority under the *Settlement Agreement* by granting them notice and an opportunity to be heard before entering the *Judgment*.[99]  As they put it, "this

---

[93]    The Debtors also contend that *Rooker-Feldman* does not bar them from having this Court revisit its own order after the State Court held *Butko I* is res judicata as to the issue of judicial estoppel.  See *Motion*, Dkt. No. 77 at ¶¶ 61-66.  Ultimately, this point is irrelevant given that the State Court did not misinterpret *Butko I*.

[94]    Butko III, 2021 WL 115558, at *26.

[95]    Id. at *27.

[96]    Id.  The lack of an Act 6 notice was a nonstarter given that the Debtors are judicially estopped from raising Act 6 notice as a defense.

[97]    Id. at *28 (emphasis in original).

[98]    Id.

[99]    *Motion*, Dkt. No. 77 at ¶ 67.

unilateral action by the Court, which was neither requested nor required . . . changed the source of the judgment to something other than the cognovit."[100]  But since the cognovit is the only source of authority to enter a judgment for possession, the Debtors theorize that the entry of the *Judgment* must necessarily have been a ministerial act as envisioned.[101]

None of these points were raised prior to *Butko III* (let alone *Butko II*, which is the subject of the appeal) and will not help the Debtors prevail now.[102]  In the first instance, it is undisputed that the Court had subject matter jurisdiction over the *Settlement Agreement* and its enforcement.  The Court will not read the *Settlement Agreement* to limit its exercise of its judicial power because the Court is not in the habit of signing away its discretion under any circumstances.[103]  And the Court observes that the Debtors took no issue with notice and an opportunity to be heard when they challenged Mr. Ciccozzi's default in *Butko I*,[104] or when they requested the Court to abstain from entering the *Judgment* in favor of further state court proceedings.[105]  More importantly, the idea that the *Settlement Agreement* calls for a confessed judgment for possession is arguably at odds with the provision that it be capable of enforcement by the State Court or the United States Marshal.[106]

Shockingly, the Debtors' position here is not solely based on a preferred interpretation of the *Settlement Agreement*, but allegedly their reliance:

---

[100]   Id. at n. 34, ¶ 70.

[101]   Id. at ¶¶ 69, 71-72.

[102]   The Court notes that arguments raised for the first time on appeal generally are not considered.  See Orie v. Dist. Attorney Allegheny Cty., 946 F.3d 187, 195 (3d Cir. 2019).

[103]   To this end, the Court refused to enter a judgment for possession in advance of a default to be held by Mr. Ciccozzi as contemplated by the *Settlement Agreement*, see *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 17, and stayed his enforcement remedies pending further proceedings after *Butko I*.  See Butko III, 2021 WL 115558, at *7.

[104]   Butko III, 2021 WL 115558, at *4-7.

[105]   Id. at *10-11.

[106]   See *Exhibit A*, Case No. 16-23695-GLT, Dkt. 137-1 at ¶ 17.

> The cognovit benefitted both parties.  Ciccozzi bargained for a right to confess judgment.  *The Butkos bargained for a right to cure because Ciccozzi **could not use the judgment** without first conforming it under Act 6.*  The Court's holding permits Ciccozzi the [sic] keep his benefit of the bargain while stripping the Butkos of theirs - the right to cure which in turn caused them to lose their home.[107]

Let there be no mistake about what this means: <u>**contrary to all their assertions since before Butko I**</u>,[108] <u>**not to mention six pages of argument in the Motion**</u>,[109] <u>**the Debtors now insist they bargained for a cognovit because they knew Act 6 would prevent Mr. Ciccozzi from enforcing a confessed judgment**</u>.[110]  In other words, they gave Mr. Ciccozzi an illusory concession to secure his agreement to one last opportunity to complete the sale.  This is precisely the type of ambush that led the Court to judicially estop them from asserting Act 6 notice defenses in *Butko I*.  It is absurd to think they can lean into that bad faith on appeal to upset adverse rulings and claim victory.

In sum, the Court finds the Debtors' likelihood of success on this issue before the District Court to be negligible because, *inter alia*, they have now intertwined their interpretation argument with a clear statement of their bad faith.  But even if they could obtain a technical win on appeal (on this issue or a related one), their <u>*admitted*</u> bad faith would leave the Court hard pressed not to vacate the *Settlement Agreement* if Mr. Ciccozzi so requests.[111]  Either way, the

---

[107]    *Motion*, Dkt. No. 77 at ¶ 68 (all emphasis added).

[108]    <u>See</u> <u>Butko III</u>, 2021 WL 115558, at *4-6, 8-9, 19, 32-35.

[109]    *Motion*, Dkt. No. 77 at ¶¶ 49-56 (explaining the "fallacy" of contending the Debtors laid an Act 6 trap because their counsel, just like Mr. Ciccozzi's counsel, the mediator, and the Court, overlooked the applicability of Act 6).

[110]    There is no other reasonable interpretation of this paragraph.  To say that the Debtors "bargained" for a specific result—a cure right unfettered by a confessed judgment that must be conformed in a separate proceeding—indicates that they were clearly aware of Act 6 and its impact on the *Settlement Agreement* as it was taking shape.

[111]    The Court does not make this statement lightly and only in response to the Debtors' unabashed claim that they knowingly bargained for the Act 6 implications that they have to this point told the Court were accidentally serendipitous and not designed.  If the Court's efforts to preserve the *Settlement Agreement* by

Court will eventually have to address the implications of this statement under Bankruptcy Rule 9011.

### iv.     Act 6 Requires a Sheriff's Sale to Terminate a Vendee's Interest

The crux of *Butko II* is the Court's conclusion that the Debtors do not have an equitable interest in the Property that survived entry of the *Judgment*.[112]  As explained above, the Court reasoned that Act 6 applies to installment land contracts like the *Settlement Agreement* by analogy, rather than literally.[113]  As a result, the Court found that judicial proceedings, which have traditionally been used to enforce installment land contracts, were sufficient to terminate a vendee's interest rendering a foreclosure sale unnecessary.[114]

The Debtors assert this was error,[115] and it may well be.  There is no controlling authority on the subject and only conflicting dicta from two bankruptcy cases—*In re Rowe* and *In re Grove*.[116]  The Court adopted the former over the latter because it seemed "difficult to accept that *Anderson Contracting Co.*[117] and Act 6 upended the traditional means of enforcing defaults in installment land contracts without a single state court making an explicit statement to that effect in over four decades," and *In re Grove* did not address the issue.[118]  On appeal, the

---

blunting the benefit of the Debtors' egregious conduct are ineffective or unsustainable, then it stands to reason that the *Settlement Agreement* should not have been preserved at all.

[112]  *Butko II*, 617 B.R. at 536; see also *Butko III*, 2021 WL 115558, at *28-31.  As noted in *Butko III*, granting stay relief on this basis did not require a determination of whether their rights terminated earlier under the *Settlement Agreement*.  See *Butko III*, 2021 WL 115558, at n. 332.

[113]  *Butko II*, 617 B.R. at 535.

[114]  Id.

[115]  *Motion*, Dkt. No. 77 at ¶¶ 73-83.

[116]  See In re Rowe, 110 B.R. at 722, and In re Grove, 208 B.R. at 847.

[117]  Anderson Contracting Co. v. Daugherty, 274 Pa. Super. 13, 417 A.2d 1227, 1232 (1979) ("the rights and remedies provided by Act No. 6, in particular, the cure provisions of Section 404, should not be denied to" vendees under an installment land contract).

[118]  Butko III, 2021 WL 115558, at *30.

Debtors urge the natural counterpoint to that observation—*Anderson Contracting Co.* did not qualify the application of Act 6 to installment land contracts.[119]   That is a fair point, but it is equally fair to acknowledge that such a qualification would have been well beyond the issue before the Superior Court.[120]   The Court does not agree with the Debtors' characterization that a "by analogy" application of Act 6 represents a "radical change in residential mortgage law" because that merely begs the question of how installment land contracts should be treated.[121]

Ultimately, the question is close enough that the Court cannot say the Debtors' chances of success on appeal are insignificant even though the Court remains unconvinced.

### 2. Irreparable Injury in the Absence of a Stay

In order to satisfy the second factor of the stay pending appeal analysis, the applicant must demonstrate that an "irreparable injury" is not merely possible, but "likely" in the absence of a stay.[122]   As opposed to the "likelihood" of success analysis under the previous factor, "likely" in this context means "more apt to occur than not."[123]   Thus, the injury "'must be neither remote nor speculative, but actual and imminent.'"[124]   The Supreme Court has explained that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."[125]   The view of the United

---

[119]   *Motion*, Dkt. No. 77 at ¶ 79.

[120]   At issue was whether the appellant's petition to cure default was appropriately denied without having received the benefit of any Act 6 protections.  Anderson Contracting Co. v. Daugherty, 417 A.2d at 1128.

[121]   See *Motion*, Dkt. No. 77 at ¶ 82.

[122]   Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

[123]   In re Revel AC, Inc., 802 F.3d at 569.

[124]   Id. at 571 (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

[125]   Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

States Court of Appeals for the Third Circuit is even more unequivocal: "a purely economic injury, compensable in money, *cannot satisfy the irreparable injury requirement*."[126]

Here, the Debtors assert that in the absence of a stay, they, along with their three grandchildren, could be ousted from the Property and the appeal rendered moot before a decision.[127]  Admittedly, the Court recognizes that the scheduled eviction makes their imminent removal all but certain.   In terms of "irreparable injury," however, the problem is that they already intend to leave the Property.  Indeed, the Debtors' chapter 13 plan proposes to sell the Property no later than May 31, 2021.[128]  As a result, this dispute is not about their ability to permanently occupy the Property as a residence, but a fight over the proceeds of a potential sale.  If that is the case, then the Debtors could be made whole by a monetary judgment in their favor against Mr. Ciccozzi.  Satisfaction from the Property itself may be preferable, but they have not offered anything to suggest they would be irreparably harmed if that were no longer possible.[129]  Given that a legal remedy will persist in any event, the Court cannot fathom how the appeal could be rendered moot.[130]

---

[126]   Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir. 2011), as amended (Mar. 7, 2012), (quoting Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988)) (internal quotations omitted) (emphasis added).

[127]   *Motion*, Dkt. No. 77 at ¶ 84.  Notably, only one paragraph (two sentences) of the *Motion* is devoted to demonstrating that the Debtors will suffer an irreparable injury.

[128]   Butko III, 2021 WL 115558, at *13.

[129]   Even assuming the Property represents the best or only opportunity to satisfy a potential judgment against Mr. Ciccozzi in the event they prevail on appeal, there is nothing stopping the Debtors from protecting themselves through other legal means, including the filing of a lis pendens.

[130]   "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).  Furthermore, the Third Circuit has held that "[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  In re Surrick, 338 F.3d 224, 230 (3d Cir. 2003).

It appearing that the only injury pled is economic, and therefore not "irreparable" under Third Circuit precedent, the Debtors have not made the requisite under the second factor of the stay pending appeal analysis.

### B.     The Balancing of the Equities

Having evaluated the Debtors' showing as to the first two factors of the stay pending appeal analysis, the Court reiterates the Third Circuit's succinct instructions:

> To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) will suffer irreparable harm absent a stay? If it has, we "balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public interest weigh against holding a ruling in abeyance pending appeal.[131]

A court assesses "where the public interest lies" by considering how the granting of a stay will have "consequences beyond the immediate parties."[132]

For all the reasons set forth above, the Court finds that the Debtors have only shown a reasonable chance of winning on appeal with respect to the fourth issue—whether Act 6 requires a sheriff's sale to terminate a vendee's equitable interest under an installment land contract. The odds as to the remaining issues are negligible to non-existent. But, while they have satisfied the first factor, the Debtors have failed to demonstrate an *irreparable* injury under the second factor. Therefore, no further analysis is required and the *Motion* must be denied.

---

[131]     <u>In re Revel AC, Inc.</u>, 802 F.3d at 571 (internal citations omitted).

[132]     <u>Id.</u> at 569 (quoting <u>Roland Mach. Co. v. Dresser Indus.</u>, 749 F.2d at 388) (internal quotations omitted).

In the interest of completeness, the Court notes that the final two factors would not alter the balance in the Debtors' favor.  Under the circumstances, the public interest only concerns the correct application of the law.[133]  Because the appeal would not be rendered moot by the Debtors' eviction, the public's stake is protected by the District Court's ability to vindicate any alleged misapplication the law.[134]

Finally, contrary to the Debtors' assertions, Mr. Ciccozzi would be substantially harmed by a stay pending appeal.  At present, he has no further right to payments from them but lacks possession of the Property and must continue to pay real estate taxes and insurance costs.[135] Given the Debtors' payment history, the Court shares Mr. Ciccozzi's skepticism of their offer of adequate protection,[136] particularly since they acknowledged a plan payment default at the hearing.[137]  In contrast, possession would enable him to mitigate those costs by either leasing the Property to someone else or selling it outright (which is his stated intent).  If sold, he would also be indisputably entitled to the first $35,000 in proceeds even if the Debtors prevail on appeal.[138] Thus, while the impact of a stay on Mr. Ciccozzi is difficult to quantify, the Court has no trouble discerning an injury.

---

[133]    See In re Scott, 605 B.R. at 384 (citing Id. at 573).

[134]    See Section III.A.2, *supra*.

[135]    See Butko III, 2021 WL 115558, at *36.

[136]    *Motion*, Dkt. No. 77 at ¶ 85 (offering $563 per month for taxes and insurance).

[137]    The Debtors are also in default of the provision of their chapter 13 plan that requires them to have filed a motion to retain a real estate broker to market the Property by December 1, 2020.  See *Chapter 13 Plan dated 5/7/2020*, Dkt. No. 25 at § 3.3.

[138]    Butko III, 2021 WL 115558, at *36.

## IV.    CONCLUSION

In light of the foregoing, the *Motion* must be denied.  This opinion constitutes the

Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The

Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.


GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Dated: February 10, 2021


Case administrator to mail to:
Debtors
Max C. Feldman, Esq.
Christian M. Rieger, Esq.